JAMES STOUT

*v.*

PHŒNIX ASSURANCE COMPANY OF LONDON.

[Filed January 8th, 1904.]

1. A provision in an insurance policy that on disagreement as to the amount of loss the same shall be ascertained by appraisers, who shall estimate the loss, stating separately the sound value and damage, does not limit the appraisement to cases where the appraisers can view the property, but an appraisement is authorized where there has been a total loss.

2. Where an insurance policy provides that on disagreement as to the amount of loss the question shall be determined by appraisers, an appraisers' award is not void because the appraisers were not sworn.

3. An insurance policy provided that on disagreement as to the amount of loss the same should be determined by appraisers. There was a total loss, and appraisers were appointed who had not seen the personal property, and had only casually seen the building; and the only information which they obtained respecting the personalty was derived from the list contained in the proof of loss, and concerning the realty from the description contained in the policy. No effort was made to ascertain the original cost of the property or to what extent it had depreciated by time and use.—*Held*, that under such circumstances assured was entitled to notice of the appraisement.

4. Where insured property was totally destroyed, an appraisement stating the value of the property at the time of the award to be $350 and the actual damage to be $140, was not in proper form.

5. On a bill to set aside an appraisement of insured property destroyed by fire, on the grounds that no appraisement was authorized by the policy and that no notice had been given assured, the court will not retain jurisdiction to determine the extent of liability of the insurer, or whether the insurer is entitled to a new appraisement, such questions being purely legal.

*Mr. Marlin Wyckoff,* for the complainant.

*Mr. William H. Morrow,* for the defendant.

Stout *v.* Phœnix Assurance Co. of London.

REED, V. C.

The dwelling-house of the complainant was insured against fire in the Phœnix Assurance Company of London for the sum of $1,800, and the household goods and furniture therein for the sum of $250 under a policy written on March 18th, 1898.

The house and furniture were burned on December 29th, 1901, and an action was brought against the company to recover the full amount of the insurance. The company, among other defences, set up in that action an appraisement of the loss or damages by the burning of the house, amounting to $1,718 for the house and $143 for household goods and furniture.

This bill was then filed to set aside the appraisement upon several grounds, among which was the allegation that the company had fraudulently imposed an interested appraiser upon the complainant. *Kiernan* v. *Dutchess County Mutual Insurance Co., 150 N. Y. 190.*

At the trial of this suit it was not proven that the appraiser selected by the company was interested, but the attack upon the appraisement was confined to the objections that, the loss being total, the provision for an appraisement did not apply any misconduct of the appraisers in agreeing upon the amounts of the loss, and that no notice to the parties was given of the time and place of making the appraisement, and no testimony was taken by the appraisers, and that, therefore, their award cannot be supported as the award of arbitrators. The policy is in the standard form fixed by our legislature. It contains this provision:

"In the event of disagreement as to the amount of loss, the same shall (as above provided) be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately the sound value and damage, and failing to agree shall submit their differences to the umpire; and the award, in writing, of any two shall determine the amount of such loss."

It is insisted that this clause provides for an appraisement merely and that an appraisement must be made from view alone. It is therefore argued that, inasmuch as there was no property

remaining to view, the loss being total, no appraisement could be made and so the award signed by the appraisers is a nullity. In support of the argument that there can be no appraisement for non-visible damages the case of *Warne* v. *Oberly, 21 Vr. 108,* is cited. The supreme court, in that case, was dealing with a certificate of damages done by trespassing swine. The certificate was made under the provisions of an old act providing for an appraisement.

The decision can be of no importance unless it is first concluded that the appraisers to be appointed under the terms of this policy are confined within as narrow limits as the statutory appraisers, who were held to be viewers only.

In my judgment their function was not so restricted.

This appraisement clause is contained in the standard form of policy prescribed in this state as well as in New York, Pennsylvania and seven other states. In many other states the clause is also in general use. The clause provides for an ascertainment of the loss or damage in a manner which makes the proceedings *sui generis;* it is not a simple appraisement, nor is it an ordinary common-law arbitration. Where property is damaged and not entirely destroyed and there is enough in sight to base a judgment as to the deterioration caused by the fire, a judgment based upon view alone may be sufficient. Where the property is entirely destroyed and there is nothing in view to show what was destroyed, information must be obtained in some other way than from mere view. This information may be obtained in a variety of ways. It may be possessed by the previous knowledge of the property by the appraisers themselves, or it may be afforded by the description of the property contained in the proofs of loss.

The form of the clause seems to be broad enough to include an appraisement for all loss, for its language is "that in the event of disagreement as to the amount of loss [clearly all the loss] the same shall be ascertained by two competent and disinterested appraisers."

I am aware that there are cases which seem to hold that this language does not empower the appraisers to estimate the loss arising by reason of the total consumption of property. The

case of *Rosenwald* v. *Phœnix Insurance Co., 50 Hun 172,* arose under the old form of policy, and the court put its conclusion that the clause in that policy did not intend the appraisement of property entirely destroyed upon the words: "The amount of sound value and all damage to the property shall  *  *  * be submitted to competent and impartial arbitrators." It was said that the submission of the "amount of sound value and all damage" necessarily contemplated that the sound article is in existence, but has been damaged, and that the arbitrators should decide as to the extent of the damage, and that it was quite clear that the provision could have no possible relation to a thing which had no existence, absolute destruction being distinguished from loss.

The view of the court in that case was afterwards applied to the words in the standard policy in the case of *Lang* v. *Eagle Fire Insurance Co., 12 App. Div. 39, 43.* The words being, as already stated, that the appraisers shall estimate and appraise the losses, stating separately "sound value and damage." The grounds upon which this conclusion was reached does not seem to me to be sound. I can perceive no reason why the sound value of an article, which has been destroyed, cannot be determined, perhaps not so readily, but yet determined as well as the sound value of an article partially destroyed. The estimate of the loss in the one case would be the entire sound value of the property and in the other the difference between the value of the property after the fire and its sound value at the time of the fire. In one instance the estimate might be made from view alone and in the other it might be necessary to acquire extrinsic information.

Nor has the view of the New York court in the two mentioned cases received the approbation of other courts. The provision for appraisement in the policy under consideration, in *Adams* v. *New York Bowery Fire Insurance Co., 85 Iowa 6, 11,* was substantially the same as the clause in our standard policy, and it was held in that case that a submission, which provided for an appraisal and estimate of the loss and damage of only that part of the property which had been saved in a damaged condition,

thereby excluding from their consideration an estimation of the amount of plaintiff's loss of totally destroyed property, was not in accordance with the clause in the policy. It was held that the policy, by any fair construction, covered all loss or damage to all the property insured, whether total or partial.

So the clause before the court in the case of *Insurance Company* v. *Morton–Scott–Robertson Co., 106 Tenn. 558, 578,* was similar to the one in the present policy, and it was held in that case that a demand for an exclusive appraisal of the salvage resulting from the fire was not warranted by the terms of the policy. The court said: "The object of the appraisal is to fix the loss in the aggregate, and this result cannot be reached by ascertaining the value of one or more constituent elements of the loss."

The same conclusion was reached by the federal circuit court of appeals in the case of *Williamson* v. *Liverpool, London and Globe Insurance Co., 122 Fed. Rep. 59,* respecting a clause similar to the one in question.

In my opinion, the appraisers in the present case had authority to estimate the amount of loss for the property insured, although the personal property was an entire loss and the dwelling, excepting the cellar walls, was also a total loss.

If the award made in this case is invalid, it must rest upon the failure of the appraisers to give notice to the insured or his agent of the time and place, when and where, the appraisement was to take place. If the provision for the ascertainment of the loss is to be regarded as an ordinary arbitration, of course the parties were entitled to notice. But, as already remarked, the proceeding is not a common-law arbitration. Of this proceeding, Vice-Chancellor Pitney remarked, in *American Central Insurance Co.* v. *Landau, 17 Dick. Ch. Rep. 73, 93:* "The proceeding here is not an ordinary arbitration, where the parties heard witnesses and appeared by counsel and acted upon sworn evidence only, but it is strictly an appraisal and ascertainment in a particular manner of the amount of the loss made by two or three parties, as the case may be, in which they acted upon their own judgment, with such information as they may obtain

in an informal way, and in which the appraiser chosen by each party is supposed and expected, in a restricted sense, to represent the party appointing him, and within reasonable limits to see to it that no legitimate consideration favorable to the party so appointing him would be overlooked by the appraiser."

In *Farrell* v. *German Insurance Co., 175 Mass. 340, 347,* it was said: "It is manifest that an arbitration thus provided for is intended to afford a simple and speedy remedy for the settlement of disputes in regard to losses, and to simplify proceedings in case of a resort to the court, and is not necessarily to be governed in all respects by the rules which apply to trials at law."

In that case it was held that arbitrators familiar with the business in which the insured had been engaged had the right to draw upon their own knowledge and experience in considering the matters submitted to them. The award was held good, although one of the arbitrators made experiments, which he reported to the other, in the presence of the parties, and made a visit to the scene of the fire and talked with third persons, and examined the books of one of them, to ascertain prices of certain articles. So it was held in *Hall* v. *Norwalk Fire Insurance Co., 57 Conn. 105,* that if appraisers are chosen by reason of their special knowledge respecting the matters in controversy, they may be justified in refusing to receive evidence.

In the case of *Insurance Company* v. *Payne, 57 Kan. 291,* it was said: "An appraisement of existing property is usually made upon actual view, or with the aid of other evidence, and in case of appraisers entirely familiar with the property afterwards destroyed they might make an intelligent estimate from their former knowledge. But this is not so as to appraisers who have never seen the property. In such cases the estimate must be as to property which was, but is not, and all knowledge of it must be derived from evidence of some sort, not necessarily on oath." In this case the appraisers had measurements, plans, photographs and a bill. So, in *Goehring* v. *Liverpool, London and Globe Insurance Co., 99 Pa. St. 13,* knowledge was obtained

by inquiry at a planing-mill and of a tinsmith, and from plans presented by the plaintiff.

Nor is an award void because appraisers were not sworn. *Zallee* v. *LaClere Insurance Co., 44 Mo. 530.*

In respect to the necessity of a notice to the parties of the time and place of the meeting of the appraisers, I think this depends upon the circumstances surrounding each case. The appellate division of the New York supreme court, in the case of *Schmitt Brothers* v. *Boston Insurance Co., 82 App. Div. 234,* said: "It is probably true that no formal notice to the assured was necessary to be given of the meeting or proceedings by the appraisers, when they acted in good faith and in the usual course. Such is the effect of our decision in *Remington Company* v. *London Assurance Co., 12 App. Div. 218.*"

The same court, in the case of *Kaiser* v. *Hamburgh–Bremen Fire Insurance Co., 59 App. Div. 525,* had said: "The rule at common law, and under the code, requiring notice to the parties of the meeting of the appraisers and an opportunity to present evidence, has not been applied with strictness in all cases of insurance appraisals. Such appraisals are regarded as still more informal, and the appraisers are not obliged to give the claimant any formal notice or to hear evidence, at least not in all cases; and yet it is quite clear that unless the insured waive it, he must either have notice or knowledge of the meeting of the appraisers and an opportunity to draw their attention to the items of his loss and make representations and explanations to them concerning the nature thereof, and thus insure a consideration of his entire claim and guard against omissions and misconduct." It was also held in that case that the appraisers could take statements respecting property totally destroyed.

This case was affirmed by the New York court of appeals (*172 N. Y. 663*). It is no doubt the safer course to give notice in all cases. Especially in cases of total loss, of all or any part of the property insured, where extrinsic information must be received, this course must be in most cases essential. But the necessity, I think, is dependent upon whether the insured has already furnished all necessary information, and whether

he has requested that he be present to make any additional explanation, or to hear what may be said by others, and perhaps upon other features, which will occur in the practical work of making an appraisement.

Now, in the present instance, neither of the appraisers had seen the personal property destroyed nor, except casually, the dwelling itself. All information respecting the personalty was derived from the list contained in the proof of loss, and all information concerning the real estate from the description contained in the policy. The appraisers had no knowledge of the age or condition of either. No effort was made to ascertain their original cost, or to what extent the property had depreciated by time or use. In this situation, I think that it was the duty of the appraisers, or some one for them, to inform the assured or his agent of the time and place when they would meet to make an appraisement, and so afford him an opportunity to make, if he wished, any explanation, or to point out sources of information that the appraisers might have the necessary knowledge to make a determination of the amount of the loss. For this failure to notify him or his agent, I think the award should be set aside.

I further remark that the award which I have before me— the one for the loss of the personalty—is not in proper form as an award for a total loss. It determined the net cash value of the property at the time of the award to be $350 and the actual damage to be $143. This would indicate that property of the value of $350 had been reduced in value by the occurrence of the fire to the amount of $143. It would not indicate that the property had been totally destroyed.

At the trial both parties expressed a desire that I should deal with the whole case and finally fix the liability or non-liability of the company upon the policy, and also the amount of money which it should pay. As the witnesses were all present, I finally consented to hear their testimony upon all branches of the case.

But I am satisfied that I should confine my judgment to the validity of the award. A court of equity in this state can deal with legal questions only, so far as their decision is incidental

or essential to the determination of some equitable question. Merely because a court of equity has acquired jurisdiction for one purpose, it is not empowered to retain the case for complete relief. *Brown* v. *Edsall, 1 Stock. 256; Lodor* v. *McGovern, 3 Dick. Ch. Rep. 275, 279; Red Jacket Tribe* v. *Hoff, 6 Stew. Eq. 441.*

The questions whether the defendants are entitled to a new appraisement, and whether the policy was nullified by the violation of the clause concerning vacancies, and what amount of damage the company should pay in case of recovery, are purely legal questions, determinable by a court of law.

I will advise a decree setting aside the award.