CARLSTON, RESPONDENT, *v.* ST. PAUL FIRE & MARINE INSURANCE CO., APPELLANT.

(No. 2,500.)

(Submitted March 16, 1908.   Decided March 28, 1908.)

[94 Pac. 756.]

*Fire Insurance—Adjustment of Loss—Arbitration and Award—Hearing—Notice—Appraisers—Agency.*

Fire Insurance—Arbitration—Award—Hearing—Notice.
   1.   While appraisers, appointed under an arbitration clause of a fire insurance policy, are not bound by technical rules and formalities, they cannot arbitrarily fix a valuation upon property destroyed, without regard to its character, but if unacquainted with it prior to its destruction, must give notice of the time and place of their meeeting and an opportunity to the parties to be heard; otherwise their award has no validity.

Same.
   2.   Where the person whose property was destroyed by fire demanded of the appraisers, appointed pursuant to an arbitration clause of a policy covering the building, an opportunity to offer evidence as to the construction and value of the structure, and was denied it, the award made by them was invalid.

Same—Appraisers—Agency—Estoppel.
   3.  Appraisers, selected to determine the value of a building destroyed by fire, are not the agents or representatives of the parties selecting them; therefore, such parties are not estopped to complain of an award made by such appraisers.

*Appeal from District Court, Lewis and Clark County; Thos. C. Bach, Judge.*

ACTION by Margaret Carlston against the St. Paul Fire & Marine Insurance Company.  From a judgment for plaintiff and an order denying a new trial, defendant appeals.  Affirmed.

*Messrs. Carpenter, Day & Carpenter,* for Appellant.

Citing: *Sterling* v. *German-Am. Ins. Co.,* 69 N. J. Eq. 339, 60 Atl. 200; *Niagara Fire Ins. Co.* v. *Boon,* 76 Ark. 153, 88 S. W. 915; *American Central Ins. Co.* v. *Landau,* 62 N. J. Eq. 73, 49 Atl. 738; *Hall* v. *Norwalk Fire Ins. Co.,* 57 Conn. 105, 17 Atl. 356; *Stout* v. *Phoenix Ins. Co.,* 65 N. J. Eq. 566, 56 Atl. 691; *Van Winkle* v. *Continental Fire Ins. Co.,* 55 W. Va. 286, 47 S. E. 82; *Stemmer* v. *Scottish Union & Nat. Ins. Co.,* 33 Or. 65, 49 Pac. 588, 53 Pac. 498; *Springfield F. & M. Ins. Co.* v. *Payne,* 57 Kan. 291, 46 Pac. 315; *Bangor Sav. Bank* v. *Niagara Fire Ins. Co.,* 85 Me. 68, 35 Am. St. Rep. 341, 26 Atl. 991, 20 L. R. A. 650; *Townsend* v. *Greenwich Ins. Co.,* 83 N. Y. Supp. 909, 86 App. Div. 323; *James* v. *Schroeder,* 61 Mich. 28, 27 N. W. 850; *Cobb* v. *Dolphin Mfg. Co.,* 108 N. Y. 463, 15 N. E. 438; *Michels* v. *Western Underwriters Assn.,* 129 Mich. 417, 89 N. W. 56; *Christianson* v. *Norwich Union Ins. Co.,* 84 Minn. 526, 87 Am. St. Rep. 379, 88 N. W. 16; *Redner* v. *New York Fire Ins. Co.,* 92 Minn. 306, 99 N. W. 886; *Hartford Fire Ins. Co.* v. *Bonner,* 56 Fed. 378, 5 C. C. A. 524.

*Messrs. Walsh & Nolan,* for Respondent.

Citing: 4 Cooley's Briefs on Insurance, 3648; *Continental Ins. Co.* v. *Garrett,* 125 Fed. 589, 60 C. C. A. 395; *Kaiser* v. *Hamburg-Bremen Ins. Co.,* 69 N. Y. Supp. 344, 59 App. Div.

525; *Phoenix Ins. Co.* v. *Moore* (Tex. Civ. App.), 46 S. W. 1131; *Redner* v. *New York Fire Ins. Co.,* 92 Minn. 306, 99 N. W. 886; *Chenowith* v. *Phoenix Ins. Co.,* 12 Ky. Law Rep. 523; *Palatine Ins. Co.* v. *O'Brien,* 152 Fed. 922-925; *Bushey* v. *Culler,* 26 Md. 534; *Connecticut Fire Ins. Co.* v. *Cohen,* 97 Md. 294, 99 Am. St. Rep. 445, 55 Atl. 675.

· MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is an action to recover upon a fire insurance policy. The amended complaint contains two causes of action. The first alleges the making of the contract of insurance, the total destruction of plaintiff's dwelling-house, that plaintiff performed all the conditions of the contract by her to be performed, and that no part of the amount for which the building was insured by the defendant has been paid. The second cause of action repeats the allegations of the first, and, in addition, alleges that pursuant to a clause in the policy the plaintiff and defendant undertook to have the value of the property destroyed ascertained by means of a board of appraisers consisting of A. P. Ross and J. Croxford, one member of which board was chosen by plaintiff, and one by defendant. To avoid the effect of the appraisement made by this board the complaint in this second cause of action alleges: "That the said Ross and the said Croxford, in making said pretended appraisement and estimate, did not at any time or at all give to the plaintiff, in any manner or at all, notice of any meeting of said appraisers Ross and Croxford at which they would hear any claims of the plaintiff or any evidence she might care to submit to them, or any notice whatever, or give to the plaintiff any opportunity whatever, or at all, to present any evidence or proof to them of her loss, or evidence or proof of the condition or value of said building so destroyed by fire, or any opportunity to present any proof or evidence of any kind whatsoever or at all, although plaintiff requested notice of any meeting of said appraisers and an opportunity to present to said appraisers evidence in said

matter, and plaintiff was at all times, and still is, ignorant of
any meeting of said appraisers for the purpose of considering
the matter referred to them, or to hear the plaintiff or any
witnesses on her behalf in relation thereo.'' It is then alleged
that subsequent to the making of the appraisement by the board
plaintiff notified the defendant that she would not be bound
thereby, and asked for a new appraisement, which was refused.

The answer to this complaint admits the making of the con-
tract of insurance and the destruction of plaintiff's building,
but denies that the building was of a value exceeding $3,500,
and admits that no part of the loss has been paid; admits that
the question of the value of the building was submitted to ap-
praisers as alleged in the complaint. It is then alleged in the
answer that the appraisers so selected met and went to the
plaintiff's place of residence for the purpose of making an ap-
praisement, of which plaintiff had knowledge; that before mak-
ing the appraisement plaintiff discussed with the appraisers
the character of the building destroyed, and that a detailed
estimate of the size and character of such building and its con-
struction, made at the instance of plaintiff, was furnished to
the appraiser selected by plaintiff; ''that plaintiff had full
opportunity and advantage to communicate to the said ap-
praisers all information which she desired to communicate rela-
tive to the condition and value of the said building.'' It is
alleged that the appraisers fixed the value of the building de-
stroyed at $3,532.25, and apportioned the amount of loss to be
borne by defendant at $756.90, a tender of which amount is
pleaded. It is then alleged that the plaintiff refused to ac-
cept the same.

The cause was tried to the court sitting with a jury. A ver-
dict for plaintiff in the sum of $1,000 and interest was re-
turned, and judgment rendered and entered thereon. From
the judgment and an order denying it a new trial, defendant,
appeals.

The assignments of error relate to the sufficiency of the com-
plaint, to the giving of certain instructions, and to the refusal.

of the trial court to give certain other instructions asked by the defendant; but in their brief counsel for appellant very properly say: "These several specifications of error present but one question, viz., the effect of the award as made by the appraisers of the value of the property destroyed by fire." It appears inferentially that there was other insurance upon the building, and, if plaintiff was bound by the appraisement made, then it may be assumed that the apportionment of the loss for which the defendant was liable was correctly made.

There is not any substantial conflict in the evidence. The plaintiff selected Ross as one of the appraisers, and the defendant selected Croxford, of Salt Lake City, as the other. These two, being able to agree, constituted the board of appraisers. A. P. Stark, the attorney for the plaintiff, notified Ross immediately after his appointment that plaintiff desired notice of the time and place of meeting of the appraisers in order that he (Stark) might present plaintiff's claim. Ross was not a witness at the trial. Croxford testified that he and Ross met at Livingston, and went to plaintiff's place of residence, which was near the site of the burned building, and that "we made inquiries of Mrs. Carlston. She took us out and showed us the debris and where the building had stood; showed us the foundation that was left. From what was left we could tell the dimensions of the house." He testified at first that a request to present testimony before the appraisers was not made of him, but, when asked if anything was said about a hearing before the appraisers, he answered: "I don't know. It is so unusual in any appraisement."

The plaintiff testified that when the appraisers were at her residence they did not discuss with her the question of the construction or value of the building which had been destroyed; that they did not visit the debris, or measure the foundation; that at the time there was not anything left of the woodwork but a piece 4x6 which had been in the front porch; that some of the debris had been hauled away; that brick and mortar from the walls and the stone walls of the foundation were there.

She testified that when the appraisers came to her place they remained in the front part of her dwelling while she was preparing their dinner. She said further: "When the dinner was over, I thought they were going to talk about the house, but they pulled right out to town. When they were going away, I asked them if I should come to town with them. They said it was not necessary, because they could not take the matter up for two or three days. They never measured the foundation, and didn't make any appraisement there. I mistrusted there was something wrong, so I went into Livingston the next morning, and I caught the Salt Lake man as he was going to the train the next morning between 10 and 11 o'clock at Livingston. I asked him about the estimate, and he says: 'You will find out from Mr. Ross.' He says he was in a hurry to go. I went to see Mr. Ross then, and he said they had arrived at a result, and he said he had no estimate made out. I asked him to give me an estimate in writing, and he said he hadn't made it out, but if I would wait till the next day he would fix it for me. * * * I told Mr. Croxford when he was at the ranch that I wanted to introduce witnesses, and he told me there was time enough to bring them in. I followed them out of the house, and I told them I wanted to produce evidence, and he said it was time enough to come the next day. * * * I could have brought men before the appraisers that worked on the house and helped to build it. There was another neighbor by the name of Kauffman I wanted to bring before the appraisers. He knew how the house was built. * * * They haven't got windows enough in the house on their estimate. I just know there is a lack of everything there. If I could have appeared before the appraisers that day when they were on the ground, I could have brought two neighbors (one of them helped to build the house), and I could have explained myself what kind of material was in the house and the number of windows and doors. Ross' list does not contain a correct statement of the various kinds of materials used in the house. It is incorrect in that we had twenty windows in the house, and I believe he has got

ten or eleven. We had wide stairs and doors, and he has got doors of the cheapest kind in there.'' She further testified: "I told Mr. Ross about the building, all I could. I asked him if Mr. Hornbeck's figures were right, and he looked all his figures over and he says: 'He hasn't got the figures high enough.' He said he couldn't built the house for that money.''

Plaintiff also introduced, as a witness in her behalf, F. S. Hornbeck, an architect and builder at Livingston who had seen the building while it was standing, and who spent two days at plaintiff's residence viewing the ruins, making measurements, and making diagrams and drawings from which he interrogated the plaintiff as to the plans of the house and the materials used in its construction. Based upon the information he received, Hornbeck made a detailed statement of the materials necessary to be used in, and the cost of, reproducing the building. His estimate of the value of the building before its destruction, based upon his statement of the cost of reproducing it, was $5,236.24. A copy of his estimate was furnished to C. M. Day, a builder at Livingston, who, at the instance of the agent of defendant, also made a detailed estimate of $3,695.43 as the cost of reproducing the building. Concerning Mr. Day the plaintiff testified: "Mr. Day did not come down to the ranch. He figured my house at one-story, and I told him it was two. He said he did not know it had two stories.''

Ross, one of the appraisers, made out an itemized list for the appraisers of the materials necessary to be used in, and the cost of, reproducing the building, and from that the appraisers estimated the value of the building before its destruction at $3,532.25. So far as this record discloses, the only information which the appraisers had upon which to make their estimate or appraisement was (a) Hornbeck's estimate; (b) Day's estimate; and (c) such information, if any, as they gained from their visit to plaintiff's premises. That the appraisers did not follow the Hornbeck or the Day estimate either in regard to the quantity or quality of the materials will be made apparent by a few illustrations:

|  | Hornbeck's Estimate. | Day's Estimate. | Appraisers' Estimate. |
|---|---|---|---|
| Dimension lumber, feet | 19,599 | 14,834 | 10,767 |
| Flooring,           "       | 3,140 | 2,800 | 2,500 |
| Shingles, number | 24,000 | 23,000 | 18,000 |
| Windows,     " | 20 | 19 | 16 |
| Wainscot, value | $106.20 | $ 90.72 | $ 70.60 |
| Flooring,     " | 219.80 | 182.00 | 137.50 |
| Painting,     " | 263.95 | 237.00 | 192.00 |

With these facts before us, including the fact that the appraisers declined to grant the plaintiff a hearing, we are called upon to answer the only question propounded by counsel for the appellant: What was the effect of the award as made by the appraisers? In the first place it is suggested by counsel for appellant that no useful purpose would have been served by granting a hearing to the plaintiff, since she had told Ross, one of the appraisers, all she knew about the building, and had furnished the appraisers with Hornbeck's detailed estimate; but it may be said in reply that the appraisers did not follow Hornbeck's estimate either as to the quantity or quality of the materials, and, although plaintiff herself had told Ross all she knew of the building, it is not apparent that she knew much about it. She purchased the building after its construction. She does say that she could have produced the evidence of witnesses who knew how the house was built, some of whom worked on its construction.

The cases cited by counsel may fairly be said to fall within one of three classes, and these may be easily illustrated: (1) If the appraisers had been sent to estimate the value of plaintiff's building before its destruction, then, being experts—experienced builders—it is easy to understand that a hearing would have been useless; for the appraisers could have made exact measurements of the size of the building, and could have observed and determined the character and quantity of the materials used in its construction. Under such circumstances the authorities are practically uniform in holding that a hearing need not be granted. A typical case of this class is *James v. Schroeder*, 61 Mich. 28, 27 N. W. 850. (2) Or, suppose

that the building had been only partially destroyed, and sufficient of it remained to disclose to the appraisers the size, general character of architecture, and the quality of the materials used in its construction, then the same rule as stated above would apply, and for the same reasons.  (3) The cases of this class are practically uniform in holding that it is a general rule that in cases where the appraisers, unacquainted with the property, are selected to estimate a loss arising from the total destruction of the property, notice of the time and place of the meeting of the appraisers, and an opportunity to the parties to be heard, are essential to the validity of the award.  (See 4 Cooley's Briefs on Insurance, 3648, where the cases are collected.)   The reason for this rule will appear at once.  In *Continental Ins. Co.* v. *Garrett,* 125 Fed. 589, 60 C. C. A. 395, it is said: "In the present case the arbitrators were to ascertain and appraise the sound value of a brick dwelling which had been so completely destroyed by fire as that substantially nothing remained of the woodwork, inside or out.  The walls themselves were in part fallen.  Thus a mere examination of the premises could not, on the evidence in this record, have informed them as to the character of the finishing of the interior work and its condition before the fire.  The appraisers were experienced contracting builders; but, without some evidence, how was it possible for them to know the sound value or the loss and damage?  Under such circumstances, appraisers should give notice to both parties of the time and place of hearing, and require evidence in respect of facts which they could not otherwise know."

Of course, if the property owner has already given to the appraisers all the pertinent information he possesses or is able to produce, he cannot be heard to complain; likewise he might expressly waive notice (*Vincent* v. *German Ins. Co.,* 120 Iowa, 272, 94 N. W. 458), or by implication be deemed to have waived notice, and other circumstances might arise which would obviate the necessity of giving such notice (*Stout* v. *Phoenix Assur. Co.,* 65 N. J. Eq. 566, 56 Atl. 691).  But none of these circum-

stances militate against the rule itself.   Of course, if the plaintiff in this instance had actually been given an opportunity to be heard, her mere statement that she desired to call witnesses and offer testimony would not have been sufficient.   (*Van Winkle* v. *Continental Fire Ins. Co.*, 55 W. Va. 286, 47 S. E. 82; *Stemmer* v. *Scottish etc. Ins. Co.*, 33 Or. 65, 53 Pac. 498.) But no matter what preparation she had made to present her case, if she was not given the opportunity to be heard, her efforts would not have availed her.

We adopt the language of Chancellor Kent in *Underhill* v. *Van Cortlandt*, 2 Johns. Ch. (N. Y.) 339, as follows: "The decision by arbitration is the decision of a tribunal of the parties' own choice and election.   It is a popular, cheap, convenient and domestic mode of trial, which the courts have always regarded with liberal indulgence.   They have never exacted from these unlettered tribunals—this *rusticum forum*—the observance of technical rule and formality.   They have only looked to see if the proceedings were honestly and fairly conducted, and, if that appeared to be the case, they have uniformly and universally refused to interfere with the judgment of the arbitrators."   But we also assert that it is a general rule that the appraisers cannot arbitrarily fix a valuation upon property without regard to the character of the property, and this upon the plainest principles of reason.

There is not any force in the suggestion that plaintiff cannot complain since she herself selected one of the appraisers.   The appraisers are not in any sense the agents or representatives of the parties who select them.   (*Connecticut Fire Ins. Co.* v. *Cohen*, 97 Md. 294, 99 Am. St. Rep. 445, 55 Atl. 675.)

We think the present case falls squarely within the rule announced in the third class of cases above.   There was not anything left of the building from which the appraisers could have ascertained its value.   The plaintiff demanded a hearing, and was denied it.   She had evidence which she desired to offer, and the appraisers should have given her the opportunity to fairly present her claim.   Under the facts disclosed by this

record we think the award was not binding upon her. There was sufficient evidence of the value of the building to go to the jury.

We find no error in the record. The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

