No. 12,318.

SAINT PAUL FIRE AND MARINE INSURANCE CO. *v.* WALSEN-
BURG LAND AND DEVELOPMENT CO.

No. 12,319.

SUN INSURANCE OFFICE *v.* TRESSLER.

Decided May 20, 1929.

Mr. S. M. TRUE, for plaintiffs in error.

Mr. WILLIAM B. STEWART, for defendants in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE plaintiffs in error, hereinafter referred to as defendants, are insurance companies, and defendants in error, hereinafter referred to as plaintiffs, each owned an automobile which was insured against loss by fire and was thereafter burned. To recover the damages thereby accruing these suits were brought. In the first one the amount claimed was $500. Defendant admitted liability in the sum of $375 and made tender thereof. Judgment was for $450. In the second the amount claimed was $800. Defendant admitted liability in the sum of $575 and made tender thereof. Judgment was for $750. To review these judgments these writs are prosecuted. In each, the same attorneys appeared for the respective parties, and each has the same history. In each case a single question is involved, and that question is the same in each. The two were consolidated for trial below and are argued together here, hence we treat them as one. Both cars were apparently burned in the same fire and both were totally destroyed. The same adjuster represented both insurance companies, and both policies contained the following clause: "In case the assured and this company shall fail to agree as to the amount of loss or damage, each shall, on the written demand of either, select a competent and disinterested appraiser. The appraisers shall first select a competent and disinterested umpire: * * * * The appraisers shall then appraise the loss and damage stating separately sound value and loss or damage to each item; and failing to agree, shall submit their difference only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of sound value and loss or damage."

Proceeding thereunder each plaintiff selected the same appraiser and each defendant did likewise. These appraisers selected the same umpire to act in each case. There is evidence that James E. Tressler, husband of the plaintiff Edith M. Tressler, was, and was known to be, authorized to act for both owners; that he had demanded

the right to appear before the appraisers and "establish the value of the automobiles"; that he had been told by the adjuster that the appraisers would meet in Walsenburg at a certain time; that at said time he sought them there for the purpose of being heard, but failed to find them; that they met at that time and made their appraisal in the city of Trinidad; that no notice was given the owners, or anyone representing them, of the meeting in Trinidad; and that said owners were not represented thereat and no opportunity was given them to be heard. The values found by the appraisers are the sums tendered by the insurance companies. They insist that the appraisals were valid. The plaintiffs set up several reasons supporting their contention that the appraisals were void. A jury was waived and the causes were tried to the court which found generally for the plaintiff in each case, and specifically in each, that—"The attempted appraisal of the value of the property destroyed was a nullity, by reason of the fact that plaintiff was given no opportunity to appear before the board of appraisers at the time the appraisement was made."

The six assignments of error in each case are identical. They amount simply to a contention that under the facts disclosed the law did not require notice to plaintiffs, or any opportunity for them to be heard, in order to validate the finding of the appraisers, and such is the question argued. The "submission" in the first case described the property as: "Reo Roadster S-62-5180, Motor 04-280, Year 1921," and in the second case as "King Touring car 82210, Motor H 65. Year 1920."

■■ It is axiomatic that every man has a right to be heard before judgment; also that he may waive that right. We do not think this appraisal clause was such a waiver. In our opinion it was an agreement that reception and consideration by the appraisers of reasonable evidence of value and loss, from whatever source that evidence came, should be deemed a hearing. Such evidence might, in some circumstances, be obtained from

their own expert knowledge, in others from an inspection of the property, or the salvaged portion of it, in others from a combination of both. Here the umpire alone appears to have had expert knowledge and he knew nothing personally about the property. The loss being complete there was nothing to inspect. True, there are known price lists of such cars which, given make, style and age (as set forth in these ''submissions''), fix standard trading values. But those values presuppose fair second-hand condition. They are not inflexible and may be very wide of the mark. These companies would never be obliged to pay them if the cars were so badly used as to be mere junk; nor could they hope to so discharge their obligation if the cars were, in all respects save age, substantially new machines. Mileage, care, condition of paint, etc., must enter largely into such appraisals. These are matters of hearing and proof. The record does not disclose that they were otherwise brought to the attention of the appraisers, save in part and by rumor.

██ Plaintiffs insist that under such circumstances a hearing must be had and evidence of some kind taken. We think they are right. The rule varies slightly in different jurisdictions, but our attention has been called to no similar cases where a denial of an opportunity to be heard has been sustained. 26 C. J. p. 422, §§557, 558; *Continental Ins. Co. v. Garrett*, 125 Fed. 589; *Security Ins. Co. v. Kelly* (Tex), 196 S. W. 874; *Carlston v. St. Paul F. & M. Ins. Co.*, 37 Mont. 118, 94 Pac. 756, 127 Am. St. Rep. 715.

Defendants insist that *Dechant v. Globe & Rutgers Fire Ins. Co.*, 194 Wis. 579, 217 N. W. 322, is in point and in their favor, but in that case there was a hearing. ''These three (the appraisers and the umpire) met at the office of plaintiff's attorney and evidence was offered before them tending to show that the value of the car at the time the policy was issued and when destroyed was $900 to $1000.'' Thereupon the adjusters went else-

where, made further investigations, and returned an award of $350, which award was finally upheld. What evidence would be accepted and what rejected was discretionary with the appraisers and the umpire. The feature of that case here material is that a hearing was granted and evidence received.

In his reply brief counsel for defendants very frankly says: "If all of the cases cited in the briefs of the contending parties had never been decided, the rule of justice and fairness should still exist and we would not contend for one minute that an appraisal based upon *no evidence* could stand in this court." He further says: "The determination of the value of a destroyed automobile is very simple * * * The value of second-hand cars is easily determined when the particular make, model and period of use and age are once ascertained." This of course indicates a determination of value by use of the price lists heretofore referred to. It omits entirely the element of condition.

Neither appraiser appeared as a witness herein but Bennett, the umpire, did. He testified that his only source of information was the appraisers, one of whom gave plaintiff's agent as his informant. This hearsay evidence is, in its essental particulars, unsupported by the record and denied by the agent. The cars were apparently burned at Walsenburg. The appraisers met there and failed to agree. Thereupon they went to Trinidad where Bennett resided. Evidently the remains of the burned cars had not been taken to Trinidad, nor had Bennett gone to Walsenburg to inspect them. He testified that he never saw them, but the award signed by him recites, "We have carefully examined * * * the remains of the property * * * and having made * * * due allowance for the value of the property saved," etc. So far as Bennett was concerned these recitals were palpably false, and Bennett was the final arbiter.

The appraisal is held void and the judgment of the district court is affirmed.

Mr. Justice Adams, sitting for Mr. Chief Justice Whitford, Mr. Justice Butler and Mr. Justice Moore concur.