EBLING BREWING CO., INC., COMPLAINANT–RESPONDENT,
v. HEIRLOOM, INC., A CORPORATION,
DEFENDANT–APPELLANT.

Argued September 27, 1948—Decided November 1, 1948.

*Mr. Mark A. Sullivan* argued the cause for the complainant-respondent (*Mr. Leo S. Sullivan* on the brief).

*Mr. Israel B. Greene* argued the cause for the defendant-appellant.

The opinion of the court was delivered by

CASE, J. The appeal is from an order appointing a statutory receiver of the defendant corporation and from other orders incident thereto. The proofs will not be recounted here as they are stated and lucidly appraised in the opinion of Vice Chancellor Egan, 141 *N. J. Eq.* 136.

The bill of complaint alleged the debt, the insolvency of the defendant, its inability to meet its maturing obligations either by the use of cash or other assets or by an honest use of credits and other matters incident to such a proceeding. Title 14 of the 1937 Revised Statutes, entitled "Corporations, General", comprehends the subject matter of the former General Corporation Act, *Ch.* 185, *P. L.* 1896. *R. S.* 14:14–3, formerly section 65 of the General Corporation Act as amended by *ch.* 221, *P. L.* 1931, provides:—

"When any corporation shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same, or if its business has been and is being conducted at a great loss and greatly prejudicial to the interest of its creditors or stockholders, any creditor, * * * may, by petition or bill of complaint setting forth the facts and circumstances of the case, apply to the court of chancery for an injunction and the appointment of a receiver or receivers or trustees.

"The court being satisfied by affidavit or otherwise of the sufficiency of the application, and of the trust of the allegations contained in the petition or bill, and upon such notice as the court by order may direct, may proceed summarily to hear the affidavits, proofs and allegations of the parties.

"If upon such inquiry it shall appear to the court that the corporation has become insolvent and is not about to resume its business in a short time thereafter, or that its business has been and is

being conducted at a great loss and greatly prejudicial to the interest of its creditors or stockholders, so that its business cannot be conducted with safety to the public and advantage to the stockholders, it may enjoin the corporation and its officers and agents from exercising any of its privileges or franchises and from collecting or receiving any debts, or paying out, selling, assigning or transferring any of its real or personal property whatsoever, except to a receiver appointed by the court, until the court shall otherwise order."

Defendant corporation has its corporate existence under the provisions of that statute and subject to the conditions therein imposed. Title 14 is a part of the defendant's charter and of the charter of every corporation formed under that statute except as the same is inapplicable and inappropriate to the objects of the corporation. *R. S.* 14:2–8.

■ A careful study of the proofs convinces us that upon the showing there made the alleged debt of the defendant to the complainant exists, that the defendant is insolvent and that the several facts necessary to support the appointment of a receiver are clearly proved. That disposes adversely of appellant's contentions that the complainant failed to establish the jurisdictional facts of insolvency and that the findings of the court were contrary to the weight of the evidence.

■ Appellant argues, however, that the denial of its demand for a jury trial was in contravention of Art. 1, par. 7 of the 1844 Constitution, and of *sec.* 8, *Ch.* 116, *Pamph. L.* 1915 *(R. S.* 2:29–9), a supplement to the General Chancery Act. The constitutional provision was that "The right of a trial by jury shall remain inviolate." That mandate, a part of the 1844 Constitution since the original adoption in 1844, was implemented by the 1915 statute as follows:—

"If any question, ordinarily determinable at law and requiring a jury trial, arise in a suit of which the court of chancery has jurisdiction, a jury trial, if required, may be ordered, but shall be deemed to be waived unless demanded in the pleadings. If demanded, and the issue be one requiring a jury trial, the court shall send such issue of fact to a court of law for trial according to the existing practice.

"In all cases coming within the purview of this section the court of chancery shall retain the cause until the legal question shall be determined, or until an adequate opportunity to determine the same shall have been given, unless justice or the public interest requires a dismissal of the cause."

We find no textual evidence in the statute of an intention to extend the field of jury trials beyond the wording of the constitution. Rather, the purpose of the statute was to clarify the practice and procedure. Vice Chancellor Buchanan said in *Sayre & Fisher Land Company v. R. U. Rue Co., 2 Misc.* 1081 *(Ch.* 1924):—

"Formerly, it seems to have been held that when this objection was made by the defendant's answer, the bill should be dismissed, but at the present time, and especially since the enactment of the 1915 Chancery act (which contains an express provision to that effect in section 8), this court sends the parties to the law court for the determination of the question of title, meanwhile retaining the bill."

The words "this objection" as used in the quoted sentence relate to a challenge in the answer to Chancery's jurisdiction to try the disputed issue. That view makes the statute entirely intelligible: on a challenge in the answer to the jurisdiction to determine an issue constitutionally reserved to a jury, the Court of Chancery need not dismiss the bill, but may, if required by the pleadings, order a jury trial; Chancery, however, to retain the cause, unless justice or the public interest should require a dismissal.

The question of jurisdiction is thus thrown back to the meaning of the constitution itself. The jurisdiction of Chancery to determine corporate insolvencies, to decide the truth of the facts and allegations in the proofs submitted by the parties and to appoint receivers existed before the adoption of the 1844 Constitution. The substance of *R. S.* 14:14–3, quoted *supra,* and in much the same language, was contained in sec. 6 of an act entitled "An Act to prevent frauds by Incorporated Companies", passed Feb. 16, 1829, *Pamph. L.* 1828, *p.* 58, was carried forward into the revision of the statute approved April 15, 1846 *(Rev.* 1845—*published in* 1847 —*Title* V, *chap.* 3, *p.* 129*),* into the revisions of 1875 *(Rev.* 1877, *p.* 175*)* and of 1896 *(Comp. Stat., p.* 1640*)* and so into our present statute. We interpret the provision of the 1844 Constitution that the "right of a trial by jury shall *remain* inviolate" to mean that the right as it then was should be preserved. As we have seen, Chancery then was and had been

for years vested with authority to determine the status of corporations with respect to their insolvency and, upon finding that insolvency existed, to appoint receivers, and, two years after the constitution had been adopted and therefore while its provisions and the reasons for the same were freshly in mind, the legislature, by revision, restated that authority.

True, the Court of Chancery had ancient authority for sending a fact issue to the Supreme Court for trial. "If any matter of fact shall render the intervention of a jury necessary, then the Court of Chancery is hereby authorized to direct an issue for the trial of the same in the Supreme Court of this state". Section 38 of "An Act respecting the Court of Chancery", passed June 13, 1799, *Acts of the General Assembly p. 597, Pennington's Rev. p.* 494. But that authority was regarded as one to be exercised with discretion and only in cases of serious doubt and for the purpose of informing the conscience of the court. That conception was expressed by Chancellor Vroom in *Miller and Stiger v. Wack,* 1 *N. J. Eq.* 204, 214 *(Ch.* 1831):—

"It is the province and the duty of this court, to decide upon the facts and the law, except in cases of real difficulty, growing out of contradictory testimony; or opposing facts and circumstances, which it is impossible for the court to reconcile. Then the issue is properly directed, to inform the conscience of the court: Le Guen v. Gouverneur & Kemble, 1 Johns. Cases, 436; 6 Johns. C. R. 255. I consider that the defendants in this case have failed to make out the facts necessary to support their claim, as against the complainants; and being clearly of that opinion, I do not feel authorized to order an issue."

The same thought was again expressed by Chancellor Vroom in *Bassett v. Johnson,* 3 *N. J. Eq.* 417, 421 *(Ch.* 1836); and later by Chancellor Pennington in *Trenton Banking Co. v. Woodruff,* 2 *N. J. Eq.* 117 *(Ch.* 1838), a foreclosure suit, the issue being whether or not the mortgage debt subsisted or had been paid. Those decisions were before the adoption of the 1844 Constitution; but the cases following that event were of the same purport. In *Hildreth v. Schillinger,* 10 *N. J. Eq.* 196 *(Ch.* 1854), Chancellor Williamson held thus upon the question of the identity of a will:—

"The defendants' counsel insisted that this question ought to be submitted to a jury. The only object of directing an issue would be to inform the conscience of the court. If I had a doubt which embarrassed me in forming a judgment upon the question, such an issue would be proper. The only object would be to relieve the court from doubt. As no such doubt exists, it is my duty to decide the case upon the evidence before me."

In *Black v. Lamb,* 12 *N. J. Eq.* 108 *(Ch.* 1858), the bill was filed to adjust the rights of the parties, but the jurisdiction of Chancery to intervene was dependent upon whether or not an indemnity bond upon which the bill was grounded, had been executed and delivered by the defendants to the complainants. Chancellor Williamson said:—

"* * * it was declared, with some emphasis on the argument of this motion, that as an issue at law was not requested by either party, it ought not to have been directed, and that the court ought to have assumed the responsibility, and decided the cause. It is true neither party did ask for the issue, and I presume the reason was, judging from the confidence assumed by the counsel on both sides, that both considered the case so clear in favor of their respective clients that they did not consider there was any room for a doubt in the mind of the court. This very circumstance is some evidence of the propriety of the course adopted; and upon further reflection, and looking at the result of the trial, I do not at all regret that I directed the issue. It appears to me now, with the additional light I have upon the subject to be an issue eminently fitted to be submitted to a jury."

There are, of course, certain questions which are purely legal, cf. *Gross v. Penna. Mortgage &c. Co.,* 103 *id.* 429 *(E. & A.* 1929), *Hayes v. Smith,* 104 *N. J. Eq.* 146 *(E. & A.* 1928), *Hart v. Leonard,* 42 *id.* 416 *(E. & A.* 1886), and with these we are not concerned.

The Court of Chancery clearly had the power to proceed in a summary way to hear the proofs bearing on the question of whether the statutory facts preliminary to the appointment of a receiver existed. The power was one which, because of its serious consequences to a corporation, called for careful exercise of discretion, but "when the court is satisfied with the sufficiency of the proofs in support of the application it may dispose of the matter". *Tachma v. Pressed Steel Car Co.,* 112 *N. J. Eq.* 411 *(E. & A.* 1933). The mere denial of the debt did not oust the court of jurisdiction. If

it appeared clearly on the factual showing that the debt existed, the denial was properly disregarded. *Walser v. Northern Valley Building Corporation,* 147 *Atl.* 494 *(E. & A.* 1929), not officially reported. Where there was doubt and Chancery desired that the claim be established at law, it could, *Jennings v. Studebaker Corporation,* 112 *N. J. Eq.* 591 *(Ch.* 1933), as always, so order.

■ It is clearly established that on March 20, 1947, the defendant company was indebted to complainant on a net balance in the sum of $47,356.44, represented by seven promissory notes, of which three, amounting to $12,000.00, were later paid, leaving four, amounting to $35,356.44 unpaid and, because of default on some of them, due at the filing of the bill. Other liquidated items brought the total indebtedness at the filing of the bill to $64,286.03. Numerous and large charges, which the defendant undertook to assert against the complainant, as of the time of the insolvency proceedings are, as the Vice Chancellor states, "nebulous and fantastic" and are without substantial documentary support. They show indication of being a fiction interposed for vexatious delay. We find no infraction of the constitution in the refusal to send the issue to the law courts for trial.

■ Other contentions are that *R. S.* 14:14–3, to the extent that it permitted a common creditor whose claim was disputed to bring an action for the appointment of a receiver, was unlawful in that it impaired the constitutional jurisdiction of the law courts, that even if the disputed factual issues herein involved did not need to be tried before a jury at law, the findings of fact of the court below were contrary to the weight of evidence and that the Court of Chancery erred in appointing a statutory receiver because the complainant failed to establish the jurisdictional facts of insolvency. For reasons already stated we find contra those contentions.

■ It is said also that the court below abused its discretion in denying defendant's application for defense money. Defendant, on October 14, 1947, asked that the custodial receiver be directed to pay Mr. Israel B. Greene $1500.00 to represent defendant in the proceedings. That application was

made prior to the submission of the defendant's case and carried no information that there was the named sum, or indeed any sum, of money available to the custodial receiver for that or any other purpose. The motion was denied by letter of the Vice Chancellor dated October 15, 1947, although the formal order was not entered until later. It thereafter developed that the total cash on hand and in bank was $181.71. We find no abuse of discretion in the court's refusal at the time and under the circumstances of the application. We express no view as to whether in any circumstance Chancery would be under a duty to grant such an application.

So, too, we find no abuse of discretion or other error in that the court made an order allowing the hearing to be opened to enable complainant to file reply affidavits. The situation as given to us in the Vice Chancellor's opinion was that on the return day the matter was heard, as permitted by the statute, on affidavits, that voluminous affidavits were submitted by Heirloom on that day without earlier service on complainant, that complainant failed to ask leave before court adjournment to file reply affidavits, that later in the day counsel communicated with the solicitors of the defendant and sought consent to file reply affidavits but was refused whereupon formal application, on notice, for permission was made and granted on the next court day. Decision had not been rendered. Defendant was allowed to, and did, file rebuttal affidavits. The matter was one within the discretion of the court and there was no abuse of that discretion. We discover no harm resulting to the defendant from the adoption of that form of procedure rather than granting a continuance before adjournment on the return day.

It should be noted that the matter was originally argued before the Court of Errors and Appeals on February 6, 1948, received an evenly divided vote on May 13, 1948, *(142 N. J. Eq.* 245*),* and is before us on a reargument granted by that court but not heard before its dissolution.

The orders appealed from will be affirmed.

HEHER, J. (dissenting). At the time of the adoption of the Constitution of 1844, Chancery was not invested with jurisdic-

tion on a bill for the appointment of a receiver of a corporation alleged to be insolvent, to resolve in a summary manner issues of fact bearing upon the very existence of the indebtedness upon which complainant's right to intervene depended. The Act of 1829 *(Pamph. L.* 1828–1831, *p.* 58*)*, the prototype of *R. S.* 14:14–3, did not, I suggest, serve to modify the alleged debtor's common-law right of trial by jury as secured by Article I, paragraph 7 of the Constitution of 1844. The provision is that "The right of trial by jury shall remain inviolate;" and it has reference to the common-law right of trial by jury. There is nothing to suggest that the Act of 1829 was designed to curtail the common-law right in any degree, and nothing in the history to signify that the framers of the Constitution were so minded.

The use of the intransitive verb "remain" does not lead to the restricted sense and meaning found by my brethren of the majority. It is one of several employed interchangeably in constitutions to secure the common-law right. 50 *C. J. S., Juries, section* 10. The interpretation thus given lays undue emphasis on the verb and loses sight of the adjective "inviolate." The common-law right was ever unviolated and inviolable, and so it shall remain.

Trial by jury was recognized as a fundamental right long before it was guaranteed by the *Magna Charta;* and it is deemed basic and fundamental in our American jurisprudence. *Bailey v. Central Vermont R. Co.,* 319 *U. S.* 350, 63 *S. Ct.* 1062, 87 *L. Ed.* 1444. *Magna Charta* cherishes the principle of trial by jury as the great bulwark of English liberties, especially by the provision that "no freeman shall be hurt, in either his person or property, unless by lawful judgment of his peers or equals, or by the law of the land." *Vide Thompson v. State of Utah,* 170 *U. S.* 343, 18 *S. Ct.* 620, 42 *L. Ed.* 1061. Quoting Story, Mr. Justice Sutherland observed that: "the Constitution would have been justly obnoxious to the most conclusive objection if it had not recognized and confirmed" the right of trial by jury "in the most solemn terms;" and he declared that "any seeming curtailment of the rights * * * should be scrutinized with the utmost care." *Dimick*

*v. Schiedt*, 293 *U. S.* 474, 55 *S. Ct.* 296, 79 *L. Ed.* 603, 95 *A. L. R.* 1150.

Thus, the law favors trial by jury; and the Constitution is to be read as sustaining the common-law right in its fullness unless the intention to curtail it is explicit. An invasion of the immemorial right by doubtful implication is inadmissible. There is no reported case, prior to the adoption of the Constitution of 1844, interpreting the Act of 1829 as permitting the establishment of the asserted creditor's claim on a summary inquiry in the insolvency proceeding itself, where there is a substantial issue of fact as to its very existence.

The purpose of the cited statute is entirely clear. The power to dissolve and wind up the affairs of an insolvent corporation through a receiver is wholly statutory. It formed no part of Chancery's original jurisdiction. It is not comprised in equity's inherent jurisdiction. The statutory proceeding for the appointment of a receiver of an insolvent corporation is in the nature of an equitable *quo warranto* designed to destroy the corporate existence and not to preserve it. The inherent jurisdiction of equity is exclusively custodial, to preserve and not to destroy the corporate body. *Attorney General v. Stevens*, 1 *N. J. Eq.* 369 *(Ch.* 1831*); National Docks Railway Co. v. Central Railroad Co.*, 32 *N. J. Eq.* 755 *(E. & A.* 1880*); Jersey City Gaslight Co. v. The Consumers Gas Co.*, 40 *N. J. Eq.* 427 *(Ch.* 1885*); Vanderbilt v. Central Railroad Co.*, 43 *N. J. Eq.* 669 *(E. & A.* 1887*); Atlantic Trust Co. v. Consolidated Electric Storage Co.*, 49 *N. J. Eq.* 402 *(Ch.* 1892*); Bull v. International Power Co.*, 84 *N. J. Eq.* 209 *(Ch.* 1915*); Smith v. Washington Casualty Ins. Co.*, 110 *N. J. Eq.* 122, 135 *(Ch.* 1932*).* In all seeming, the object of the Act of 1829, *supra,* was to invest Chancery with a summary jurisdiction to appoint a receiver for an insolvent corporation, but not to assign to it the common-law function of determining the existence of the claimed indebtedness without which the complainant's status as a creditor would be nonexistent, where the facts are substantially in dispute. There is no indication that the establishment of the debt by a summary proceeding in equity in such circumstances was within legislative intendment. Where there are issues of fact

which raise a substantial doubt as to the existence of the debt, the obligation should first be established by a judgment at law. *Jennings v. Studebaker Corporation,* 112 N. J. Eq. 591 *(Ch.* 1933*). Vide R. S.* 2:29–9. Until then, Chancery's jurisdiction under the statute is not invocable. The creditor status is a condition prerequisite. Insolvency alone is not enough under the statute. If complainant is not a creditor or stockholder, he has no interest in the corporation.

But insolvency is also a jurisdictional *sine qua non.* Here, as in the case of *Atlantic Trust Co. v. Consolidated Electric Storage Co., supra,* that condition does not obtain if complainant's claim be nonexistent. There are no other debts to speak of; certainly none of large amount, and none which the corporation has not the means to liquidate promptly. In the case last cited, Vice Chancellor Van Fleet said that, in a purely summary proceeding, the court usually acts "upon facts which cannot be denied or disputed," and where insolvency depends upon the subsistence of complainant's claim, the debt must be proved by evidence that is "clear and convincing," for insolvency is a jurisdictional fact; if there be "doubt" as to this, the court is obliged to resolve it against the application "and refuse to interfere." A mere denial of the indebtedness is not sufficient to stay the hand of equity. If the proofs clearly demonstrate that the denial is sham, the claim is established and equity's statutory jurisdiction becomes operative, but not otherwise.

Complainant's claim is not in that category. The defendant corporation interposed demands for damages for breaches of contract and for overcharges allegedly made in violation of Federal price regulations, all totalling many times the amount of complainant's claim. There were set-offs and counterclaims (a) for failure to deliver beer in the quantity stipulated; (b) for the delivery of "spoiled, unfit and misbranded beer;" (c) for promotional and advertising expenses; (d) for OPA overcharges; and (e) for empty beer containers returned or tendered, in itself a very substantial claim. The affidavits introduced by defendant are circumstantial and plainly raise substantial issues of fact as to the existence of the debt asserted by complainant; but the learned Vice Chancellor in a summary

proceeding, on *ex parte* affidavits *pro* and *con,* weighed the proofs thus submitted, determined the credibility of the affiants, and found insolvency. In so concluding he wholly disregarded the corporation's off-setting claims, not as clearly sham, but merely as of "doubtful validity." After reviewing defendant's affidavits, the Vice Chancellor said: "The issue involved is the solvency or insolvency of Heirloom. I am satisfied that Ebling has a proper status as a creditor and that the claims asserted by Heirloom are of such doubtful validity that this court must ignore them in its consideration of the matter." This, I submit, was clear error. The issue was not insolvency alone. On this finding, there was no jurisdiction under the statute to appoint a receiver. Plainly, the Vice Chancellor did not undertake to determine the validity of the corporation's claims by way of set-off and counterclaim, presumably because a summary inquiry was not adapted to that end. He simply ignored the claims as of "doubtful validity." But is it not quite obvious that until these set-offs and counterclaims are adjudicated, complainant's claim is not proved, and so neither the requisite creditor status nor insolvency was established?

And, if there was jurisdiction, it would seem that in the special circumstances the exercise of a sound discretion would lead to a denial of the application for a receiver pending the establishment of the debt at law, for there might very well be a rejection of the claim in its entirety or a reduction to a sum within the means of the corporation. Its relations with complainant had been unsatisfactory. It is conceded that beer of an inferior quality had been supplied to defendant, and that complainant had sometime before settled a claim on this score for $50,000. There was undoubted damage to good will. Defendant finally secured a new place of business and the agency of another brand of beer, and had arranged for a substantial loan and a line of credit adequate for the financing of the new venture.

Such applications invoke the sound discretion of the court, guided by the statutory considerations. The statute confers an extraordinary power that is of necessity to be exercised with great caution and circumspection, and only when the circum-

.stances and the ends of justice clearly dictate that course. *Atlantic Trust Co. v. Consolidated Electric Storage Co., supra; Glaser v. Achtcl-Stetter's Restaurant,* 106 *N. J. Eq.* 150 *(E. & A.* 1929); *Tachma v. Pressed Steel Car Co.,* 112 *N. J. Eq.* 411 *(E. & A.* 1932). As said, the full exercise of the power is destructive of the corporate existence. This power of life and death should be exercised adversely to the corporation only in the clearest case.

I would reverse the decree.

*For affirmance:* Chief Justice VANDERBILT and Justices CASE, WACHENFELD, BURLING, and ACKERSON—5.

*For reversal:* Justice HEHER—1.