678 A.2d 667

MARY BRENNAN, PLAINTIFF–RESPONDENT, v. JOSEPH S. ORBAN, JR.; DEFENDANT–APPELLANT.

MARY KATHRYN BRENNAN, PLAINTIFF–RESPONDENT, v. JOSEPH S. ORBAN, JR., DEFENDANT–APPELLANT.

Argued February 14, 1996—Decided July 16, 1996.

*Steven K. Warner* argued the cause for appellant (*Satterlee, Stephens, Burke & Burke* and *Charles H. Brandt,* attorneys; *Thomas V. Manahan,* of counsel).

*Robert J. Durst, II* and *Beth G. Baldinger* argued the cause for respondent (*Stark & Stark,* attorneys; *Mr. Durst, Ms. Baldinger,* and *Sudha T. Kantor,* on the briefs).

The opinion of the Court was delivered by

O'HERN, J.

The question in this appeal is whether a marital tort that is joined with other claims in dissolution of marriage should be tried by judge or jury. We hold that when vindication of the public policy against domestic violence outweighs in its significance to the family the other matters awaiting disposition, the tort claim should, at the request of a victim, be tried by a civil jury.

I

The issue arises in the context of a marriage in which the dominant matter in controversy appears to be the marital tort. This marriage of two professionals was of relatively short duration. Each had been married previously. Defendant Joseph Orban, Jr., is an associate general counsel for a major corporation.

Plaintiff Mary Brennan was an attorney with the same company until 1993, and now serves as the executive director of a hospital trade association. No children were born of their marriage. Although the record before us does not disclose the details, we surmise that both professionals have separate income-producing capacities and that the issues of equitable distribution should not present the difficulties of cases such as *Lynn v. Lynn*, 91 *N.J.* 510, 453 *A.*2d 539 (1982) or *Kothari v. Kothari*, 255 *N.J.Super.* 500, 605 *A.*2d 750 (App.Div.1992).

The parties were married on January 23, 1991. They later purchased a home in Red Bank, New Jersey, where they resided until their separation in September 1994. That separation was triggered on September 26, 1994, when plaintiff Brennan obtained a Domestic Violence Temporary Restraining Order against defendant. The Order prohibited defendant from having any contact with plaintiff and granted plaintiff exclusive possession of the marital home, thereby marking the end of the parties' cohabitation. On October 4, 1994, plaintiff filed a complaint for divorce in the Chancery Division, Family Part, of Monmouth County, seeking relief on grounds of extreme cruelty.

Two weeks later, on October 17, 1994, plaintiff instituted her marital tort action, with a jury demand, in the Law Division, Monmouth County. Plaintiff sought recovery for injuries resulting from defendant's mental and physical abuse. Her principal claim arose out of a February 26, 1994, incident in which she alleges that her husband struck her in the head following an argument. Apparently, defendant took plaintiff to the hospital. Plaintiff asserts and the hospital records disclose that doctors treated her for a "severe deep irregular laceration" to her forehead.

On April 28, 1995, defendant moved to consolidate the matrimonial and personal injury actions. Plaintiff filed a cross-motion to confirm her right to a jury trial on her personal injury claims. The Family Part heard those motions together on June 16, 1995. At the conclusion of oral argument, the Family Part granted

defendant's motion to consolidate the two actions and denied plaintiff's motion to have her tort claim heard by a jury.

The court held that *Tevis v. Tevis,* 79 *N.J.* 422, 400 *A.2d* 1189 (1979), requires marital tort claims to be joined with a pending action for divorce. Once the actions are consolidated in the Chancery Division, the court reasoned, the doctrine of ancillary jurisdiction permits a court of equity to grant full legal relief on a party's action for damages. Such relief can be provided without any right to a jury trial arising. The court acknowledged that a divergence of case law existed on the application of the ancillary jurisdiction doctrine to the context of marital torts. *Davis v. Davis,* 182 *N.J.Super.* 397, 442 *A.2d* 208 (Ch.Div.1981), held that a tort claim is ancillary to a divorce action, and thus denied plaintiff's request for a jury trial. In contrast, *Tweedley v. Tweedley,* 277 *N.J.Super.* 246, 649 *A.2d* 630 (Ch.Div.1994), held that a wife's tort claim was not ancillary to her husband's action for divorce, and thus a jury trial should be provided. Noting that those cases were not binding on a court of equal jurisdiction, the Family Part concluded that plaintiff was not entitled to a jury trial because her personal injury claim was ancillary to her divorce action, the "primary dispute between the parties."

The Appellate Division granted plaintiff's motion for leave to appeal from that portion of the Family Part's order that denied plaintiff her right to a jury trial. It reversed the lower court's denial of plaintiff's jury trial application and remanded the matter

[t]o permit plaintiff to introduce proof of her physical and mental health and for the court to determine if the injury suffered is serious and significant resulting in permanent physical or psychological damage or alternatively that the medical proofs to be presented at trial are complex, in which case, plaintiff is entitled to a jury trial for this *Tevis* claim. Otherwise, plaintiff's tort claim shall be determined ancillary to the divorce proceeding and be heard without a jury.

The panel's decision adopted the test that was later established in *Giovine v. Giovine,* 284 *N.J.Super.* 3, 663 *A.2d* 109 (App.Div.1995).

We granted defendant's motion for leave to appeal, 142 *N.J.* 512, 665 *A.2d* 1105 (1995), and permitted the parties to file supplemental briefs.

## II

■ The entire controversy doctrine requires that all claims between parties "arising out of or relating to the same transactional circumstances ... be joined in a single action." *Brown v. Brown*, 208 *N.J.Super.* 372, 377–78, 506 *A.2d* 29 (App.Div.1986). In *Mystic Isle Development Corporation v. Perskie & Nehmad*, 142 *N.J.* 310, 323, 662 *A.2d* 523 (1995), this Court explained that "it is the factual circumstances giving rise to the controversy itself, rather than a commonality of claims, issues or parties, that triggers the requirement of joinder to create a cohesive and complete litigation." New Jersey courts have held that this policy of mandatory joinder applies to family actions. Pressler, *Current N.J. Court Rules*, comment 5 on *R.* 5:1–2 (1996). In the leading case of *Tevis v. Tevis, supra*, 79 *N.J.* 422, 400 *A.2d* 1189, this Court determined that "marital torts, as a class, are to be considered as related to, not 'independent' of, divorce suits." Bruce D. Greenberg & Gary K. Wolinetz, *The Right to a Civil Jury Trial in New Jersey*, 47 *Rutgers L.Rev.* 1461, 1481 (1995) [hereinafter Greenberg & Wolinetz]. In *Tevis*, the parties divorced in May 1975 and the former wife instituted a tort action against her ex-husband six weeks later to recover damages for physical abuse that occurred in May 1973. 79 *N.J.* at 425, 400 *A.2d* 1189. Reasoning that the circumstances of the marital tort and its potential for money damages were relevant to the Chancery Division's dissolution proceeding, the Court held that the plaintiff's

claim should not have been held in abeyance; it should, under the "single controversy" doctrine, have been presented in conjunction with [the divorce] action as part of the overall dispute between the parties in order to lay at rest all their legal differences in one proceeding and avoid the prolongation and fractionalization of litigation.

[*Tevis, supra*, 79 *N.J.* at 434, 400 *A.2d* 1189.]

Even the conflicting cases of *Davis, supra*, 182 *N.J.Super.* at 398, 442 *A.2d* 208, and *Tweedley, supra*, 277 *N.J.Super.* at 248–49, 649 *A.2d* 630, both rely on *Tevis* for the proposition that a spouse must bring a tort action arising out of the marital relationship as part of the divorce complaint being heard in the Chancery Division.

 Despite its policy of joinder of claims, the boundaries of the entire controversy doctrine are not limitless. *Mystic Isle, supra,* 142 *N.J.* at 323, 662 *A.*2d 523. It remains an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases. *Ibid. Brown, supra,* 208 *N.J.Super.* 372, 506 *A.*2d 29, provides an example of a case in which an evaluation of the causes of action led the court to conclude that preclusion of the plaintiff's tort claim was not warranted. In that case, the plaintiff filed her divorce complaint in March 1981. In September 1981, while the divorce action was pending, the plaintiff was physically assaulted by her husband. Because the plaintiff's divorce attorney learned of the assault one month before the divorce action was scheduled for trial, he declined to incorporate the tort claim into her pending dissolution action. Consequently, the plaintiff waited and filed suit when her divorce became final. *Id.* at 376, 506 *A.*2d 29. Although the Appellate Division concluded that the entire controversy doctrine ordinarily requires joinder of related claims arising while the divorce action is pending, the court made an exception because equitable considerations rendered application of the doctrine unfair. *Id.* at 374, 506 *A.*2d 29.

 No comparable basis for relaxing the application of the entire controversy doctrine exists in this case. Unlike that of the plaintiff in *Brown,* the assault underlying Brennan's personal injury claim occurred before she filed for divorce. The tort arose out of her marital relationship. In addition, the tort complaint alleges many of the same factual circumstances as the divorce complaint that plaintiff had filed two weeks earlier. Thus, joinder under the entire controversy doctrine is appropriate in this case.

### III

 That the several claims between the parties should be tried in the same action does not resolve the question of whether they should be tried by a judge or jury. The right to trial by jury in New Jersey must arise either by statute or under the New

Jersey Constitution. *Shaner v. Horizon Bancorp.*, 116 *N.J.* 433, 435–36, 561 *A.*2d 1130 (1989). No statute requires the jury trial of marital tort claims. Article 1, Paragraph 9 of the 1947 New Jersey Constitution provides that "[t]he right of trial by jury shall remain inviolate." *N.J. Const.*, art. 1, ¶ 9. In interpreting that language, the Court has stated that the constitutional provision does not enlarge the scope of the right to a jury trial; "it merely precludes its attrition by either the Legislature or the courts." *Steiner v. Stein,* 2 *N.J.* 367, 379, 66 *A.*2d 719 (1949). That the constitutional provision affording litigants the right of trial by jury did not extend to equitable actions in Chancery has long been understood. *Lyn–Anna Properties v. Harborview Dev. Corp.*, 145 *N.J.* 313, 321, 678 *A.*2d 683 (1996). In New Jersey, since colonial times, jurisdiction to grant divorces has been vested in courts of chancery. *Wigder v. Wigder,* 14 *N.J. Misc.* 880, 882, 188 *A.* 235 (Ch.Div.1936).

To determine whether a litigant is entitled to a jury trial, a court ordinarily examines the historical basis of the cause of action to ascertain whether a right to a jury trial existed at common law at the time the Constitution was adopted. *Shaner, supra,* 116 *N.J.* at 447, 561 *A.*2d 1130; *State v. Anderson,* 127 *N.J.* 191, 207, 603 *A.*2d 928 (1992). We need not debate the social philosophy and circumstances of history that led the common law to conclude that husband and wife were viewed as one, a concept that would have made a marital tort unknown to the early law.[1] In *Lyn–Anna, supra,* 145 *N.J.* 313, 678 *A.*2d 683, also decided today, we examine the development of the constitutional right to trial by jury in each of the New Jersey Constitutions of 1776, 1844, and 1947. It is not just the residue of history that decides constitutional entitlement but the ideals of a modern system of

---

[1] Until the late nineteenth century, law afforded virtually no protection to battered wives. Quite to the contrary, the concept of a wife as property lent credence to such conduct. Benjamin Z. Rice, Note and Comment, *A Voice from* People v. Simpson: *Reconsidering the Propensity Rule in Spousal Homicide Cases,* 29 *Loy. L.A. L.Rev.* 939, 940–41 (1996).

justice. *Id.* at 328–329, 678 *A*.2d 683 (quoting IV *Proceedings of the New Jersey Constitutional Convention of 1947* 109). One of the linchpins of a modern system of justice is the requirement that a single court have the authority to decide all matters in controversy between parties. We have no doubt that an assault by one person upon another is a familiar common-law tort. The question is whether a single court should have jurisdiction to try the claim with other claims before that court.

█ *Tevis, supra,* 79 *N.J.* 422, 400 *A*.2d 1189, required parties to join marital tort claims to dissolution proceedings pending in the Chancery Division, Family Part. The Court did not, however, decide whether or not claimants are entitled to try their tort claims before a jury. To resolve that question, a court must determine if the tort claims are ancillary and incidental to the underlying divorce action. *See Steiner, supra,* 2 *N.J.* 367, 66 *A*.2d 719; *Fleischer v. James Drug Stores,* 1 *N.J.* 138, 62 A.2d 383 (1948); *Mantell v. Int'l Plastic Harmonica Corp.,* 141 *N.J. Eq.* 379, 55 *A*.2d 250 (E. & A. 1947). In *Lyn–Anna Properties, supra,* we review in detail the history of the constitutional provision and the doctrine of ancillary jurisdiction.

█ Under the doctrine, once the Chancery Division asserts jurisdiction over a complaint seeking equitable relief, it has the power to dispose of ancillary legal claims and award money damages. *Mantell, supra,* 141 *N.J. Eq.* at 393, 55 *A*.2d 250. Legal issues are ancillary if they are "germane to or grow out of the subject-matter of the equitable jurisdiction." *Fleischer, supra,* 1 *N.J.* at 150, 62 *A*.2d 383. Following the adoption of the 1947 New Jersey Constitution, this Court made clear that pursuant to the doctrine of ancillary jurisdiction, a Chancery Court could properly adjudicate an ancillary legal claim without providing the complainant with a jury trial. *See Ebling Brewing Co. v. Heirloom, Inc.,* 1 *N.J.* 71, 76, 61 *A*.2d 885 (1948); *Fleischer, supra,* 1 *N.J.* at 150, 62 *A*.2d 383. While Chancery Courts continue to adjudicate ancillary legal claims without a jury, few cases have

addressed that issue in the context of a tort claim arising from an incident of domestic violence.

Two years after *Tevis* was decided, a subcommittee of the Supreme Court Committee on Matrimonial Litigation was formed to study the jury trial issue more closely. The Subcommittee prepared a report that outlined the doctrine of ancillary equitable jurisdiction and noted its impact on a Chancery Court's ability to resolve ancillary legal issues without a jury. *See* Supreme Court Subcommittee on Matrimonial Practice, *Tevis v. Tevis: Does the Right to a Jury Trial Exist for the "Marital Tort"?* [hereinafter Subcommittee Report]. After analyzing whether a marital tort action is "germane to or grows out of" the subject matter of a matrimonial proceeding, the report concluded, "[I]t would appear that a court would be justified in denying the right to a jury trial in the *Tevis* situation." *Id.* at 8. The Subcommittee reasoned that because a tort action involves an award of damages from one spouse to the other, that claim, like the divorce action, "is a division of assets type matter." *Id.* at 6–7. In addition, it noted that where, as in the case at bar, the matrimonial action "is one sounding in extreme cruelty, the same issues would be tried in the divorce action and the tort action." *Id.* at 6.

After reviewing the Subcommittee Report, the full Supreme Court Committee on Matrimonial Litigation concluded:

Since the marital tort damage claim is so closely related to the subject matter of equitable distribution, it passes the test of "incidental and ancillary." Thus, it appears not to require a jury trial.

*Recommendations*

... As a matter of judicial administration, no jury trial for a marital tort should be provided in an action for divorce.

[Supreme Court Committee on Matrimonial Litigation, *Phase Two Final Report*, June 10, 1981, at 79.]

In December 1995, the Supreme Court Family Practice Committee appointed a Jury Trial Subcommittee to revisit the issue of how the Family Part should adjudicate ancillary legal claims that are joined in Chancery actions pursuant to this Court's decision in *Tevis*. That Subcommittee's recommendations are soon to be

published and are consistent with those of the 1981 Committee on Matrimonial Litigation.[2] The Subcommittee concluded that "[a] litigant who files a marital tort as part of a dissolution action should not be granted a trial by jury." Jury Trial Subcommittee on Family Practice, *Report Concerning Jury Trials When a Marital Tort is Joined in a Dissolution Action* at 2 (1996) [hereinafter Jury Trial Report].

As noted earlier, *Davis, supra,* 182 *N.J.Super.* 397, 442 *A.*2d 208, is one of the two conflicting Chancery Division cases that has confronted the question of how to litigate a tort claim that is ancillary to the underlying equitable action for divorce. In *Davis,* the court relied on the recommendation of the 1981 Committee on Matrimonial Litigation to reach the conclusion that the marital tort claim was ancillary and incidental to plaintiff's divorce action, which was considered the main dispute between the parties. *Id.* at 399, 442 *A.*2d 208. Based on that finding, the court denied plaintiff's request for a jury trial. *Ibid.* That result was later approved by the Appellate Division in *Chiacchio v. Chiacchio.* 198 *N.J.Super.* 1, 6, 486 *A.*2d 335 (1984) (endorsing rationale in *Davis,* but holding that defendant's claim of indemnity against homeowner's insurer for plaintiff's tort claim should be transferred to Law Division and heard by jury because it did not arise out of marital relationship that gave rise to plaintiff's divorce and tort actions).[3]

---

[2] An informal account of the Subcommittee's recommendations was reported in the *New Jersey Lawyer* on April 22, 1996. Dana Coleman, "Court panel: no separate tort trial in divorce suits," 5 *N.J.L.* 827 (1996).

[3] Defendant also cites two cases arising in somewhat different contexts to support his argument that plaintiff is not entitled to a jury trial on her tort claim because it is ancillary to her primary claim for divorce. *Apollo v. Kim Anh Pham,* 192 *N.J.Super.* 427, 431, 470 A.2d 934 (Ch.Div.1983), *aff'd,* 224 *N.J.Super.* 89, 539 A.2d 1222 (App.Div.1987) (in denying defendant's motion for jury trial on counterclaim that sought both damages and equitable relief, court held that "the constitutional right of trial by jury is subject to the inherent jurisdiction of equity, which has general jurisdiction to adjudicate ancillary and incidental matters."); *Croswell v. Shenouda,* 275 *N.J.Super.* 614, 630, 646 A.2d 1140

The principal case supporting plaintiff's argument that a marital tort victim should be entitled to a jury trial on her personal injury claim even if it is joined to an equitable claim for divorce under the entire controversy doctrine is *Tweedley, supra,* 277 *N.J.Super.* 246, 649 *A.*2d 630. In that case, the husband filed an action for divorce on the grounds of extreme cruelty. The wife counterclaimed, seeking a divorce on the same grounds, and also alleging tort claims for physical assault, mental cruelty and emotional distress, for which she demanded a jury trial. *Id.* at 247–48, 649 *A.*2d 630. After reviewing judicial precedent on the issue, the court granted Mrs. Tweedley's request for a jury trial on her assault and emotional distress claims. The trial court concluded that "it seems inherently unfair to deny a party a [jury trial] right that would have been afforded but for marriage and, unfortunately, divorce." *Id.* at 254, 649 *A.*2d 630.

Relying in large part on *Tweedley,* a divided Appellate Division panel in *Giovine, supra,* held that certain marital tort plaintiffs have a right to a jury trial when their claims are joined to a matrimonial action pending in the Chancery Division. 284 *N.J.Super.* at 27–28, 663 *A.*2d 109. Like plaintiff's claim in this case, *Giovine* involved a woman who sued her husband for divorce and at the same time asserted claims for a variety of domestic torts. The trial court denied the plaintiff's request for a jury trial on her tort claims but the Appellate Division reversed and remanded. The appellate court rejected the reasoning in *Davis* and the 1981 Subcommittee Report, finding the analysis in *Tweedley* more persuasive. *Ibid.* A majority of the court stated that it would be unreasonable to afford a jury trial to a tort claimant who is not suing for divorce, while denying such a right to an injured spouse who seeks a divorce in the same action. *Id.* at 28, 663 *A.*2d 109.

---

(Ch.Div.1994) (when plaintiff sought to join equitable action for domestic violence restraining order with paternity action that ordinarily entitles parties to trial by jury, court held that it had "ancillary jurisdiction to determine paternity, and that defendant's right to a trial by jury on this issue must yield to this court's inherent equitable jurisdiction to make a final adjudication of the entire controversy").

Although it recognized a jury trial right, the majority limited that right to certain types of injuries. In so doing, it established the test for determining whether a tort plaintiff is entitled to a jury trial that the Appellate Division adopted below in its August 3rd Order.

[I]n order to qualify for a jury trial, the claimant must establish by written expert opinion that proofs will be introduced at trial demonstrating that the injury is serious and significant, resulting in permanent physical or psychological injury, to be defined and developed on a case-by-case approach. Alternatively, a plaintiff must establish that the nature of the injury, whether physical or psychological, requires complex medical evidence.

[*Ibid.*]

The dissent relied on the standard for ancillary equitable jurisdiction that was enunciated in *Fleischer, supra,* and has found continued support in cases like *Apollo, supra,* and *Boardwalk Properties, Inc. v. BPHC Acquisition, Inc.,* 253 *N.J.Super.* 515, 602 *A.*2d 733 (App.Div.1991). Thus, it concluded that the trial court was correct to find that plaintiff's personal injury claims were ancillary and incidental to the matrimonial aspects of her complaint.

Indeed, the only specific factual allegations set forth in the tort counts of plaintiff's complaint that are not also set forth in the divorce counts relate to the alleged March 1972 assault and battery. Therefore, plaintiff's tort claims are "germane to [and] grow out of the subject-matter" of her equitable complaint for divorce. [*Giovine, supra,* 284 *N.J.Super.* at 42, 663 *A.*2d 109 (Skillman, J., dissenting) (quoting *Fleischer, supra,* 1 *N.J.* at 150, 62 *A.*2d 383).]

In their article *The Right to a Civil Jury Trial in New Jersey, supra,* 47 *Rutgers L.Rev.* 1461, Bruce Greenberg and Gary Wolinetz question the approach of the *Giovine* majority (which was adopted by the Appellate Division in this case). Greenberg and Wolinetz contend that the holdings in *Tweedley* and *Giovine* are inconsistent with this Court's decision in *Tevis, supra.* Although *Tevis* did not address directly the issue of jury trials, it held that "marital torts, as a class, are to be considered as related to, not 'independent' of, divorce suits." Greenberg and Wolinetz, *supra,* 47 *Rutgers L.Rev.* at 1481. Greenberg and Wolinetz explained, "It is difficult to see, however, how marital tort claims could be

considered so integral to the divorce action that they must be brought in that divorce case, while simultaneously being 'independent' of the divorce so that a jury trial is appropriate." *Id.* at 1481 n. 105.

Greenberg and Wolinetz then identified the flaw in the legal reasoning of the *Giovine* majority.

> In addition to overlooking the effect of *Tevis* on jury trial rights, the *Giovine* majority replaced the legal/equitable basis for the jury trial decision with a serious/non-serious injury criterion that finds no basis in the New Jersey Constitution, New Jersey Court Rules, or case law.
>
> [*Id.* at 1482 (footnote omitted).]

They predicted that "[w]hile that decision has appeal, based on the unhappy facts of marital torts, the New Jersey Supreme Court will have to, at a minimum, revise *Tevis* if it is to uphold the ruling of *Giovine*." *Ibid.*

## IV

We agree that the distinction between serious and non-serious injuries does not find support in New Jersey constitutional doctrine. In another sense, we believe that there is no such thing as an act of domestic violence that is not serious. Every action of recent Legislatures has been intended to underscore the serious nature of the domestic violence problem in our society. Consider some recent findings.

A 1992 congressional report indicated that the most dangerous place in the United States for a woman to be is in her home. Linda L. Ammons, *Discretionary Justice: A Legal and Policy Analysis of a Governor's Use of the Clemency Power in the Cases of Incarcerated Battered Women*, 3 *J.L. & Pol'y*, 1, 5 (1994) [hereinafter Ammons]. In *Planned Parenthood v. Casey*, 505 *U.S.* 833, 891, 112 *S.Ct.* 2791, 2828, 120 *L.Ed.*2d 674, 724 (1992), the United States Supreme Court observed that "on an average day in the United States, nearly 11,000 women are severely assaulted by their male partners." Stated another way, according to the National Coalition Against Domestic Violence, "every fifteen seconds a woman in America is abused, and each day at least four

women are killed by their batterers." Ammons, *supra*, 3 *J.L. & Pol'y* at 6. Other studies show that "up to 80% of wives suing for divorce cite physical abuse by their husbands and nearly 50% of all homeless women and children report facing domestic violence at some point." *Ibid.* The problem of domestic violence has become so pervasive that scholars now repeatedly refer to it as an "epidemic." *E.g., id.* at 5; Edward S. Snyder, *Remedies for Domestic Violence: A Continuing Challenge*, 12 *J. Am. Acad. Matrim. Law* 335, 336 (1994); Katherine Hancock Ragsdale, *The Role of Religious Institutions in Responding to the Domestic Violence Crisis*, 58 *Alb. L.Rev.* 1149, 1163 (1995).

> The epidemic is particularly acute among poor women, whose families must cope with the stress of extreme poverty as well as other factors that contribute to violence. In Washington, the only state to collect this information, 60% of women on public assistance reported sexual and physical abuse as adults, usually by a spouse or boyfriend.
>
> [Martha F. Davis & Susan J. Kraham, *Protecting Women's Welfare in the Face of Violence*, 22 *Fordham Urb. L.J.* 1141, 1145 (1995).]

This case demonstrates, however, that the domestic violence epidemic cuts across socio-economic lines and is not simply restricted to the poor or uneducated. Just last term, in a disciplinary case brought against an attorney who was convicted of assaulting his girlfriend, this Court noted that "[t]he national spotlight is focused on domestic violence. Between three and four million women each year are battered by husbands, partners, and boyfriends." *In re Magid*, 139 *N.J.* 449, 453, 655 *A.2d* 916 (1995) (citing *Domestic Violence: Not Just A Family Matter: Hearing Before the Subcomm. on Crime and Criminal Justice of the House Comm. on the Judiciary*, 103d Cong., 2d Sess. (June 30, 1994) (statement of Sen. Joseph Biden, Jr.)).

In 1994, Congress reacted to this national epidemic. Violence Against Women Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796 (codified in scattered sections of 16 *U.S.C.*, 18 *U.S.C.*, 28 *U.S.C.* and 42 *U.S.C.*). New Jersey has been in the forefront of states that have sought to curb domestic violence. In 1991, the Legislature re-wrote New Jersey's Prevention of Domestic Violence Act. *N.J.S.A.* 2C:25–17 to –33.

The New Jersey statute enumerates the most comprehensive protection for abuse victims. In addition to offering financial support for petitioner and her children, which is typically available in civil protection order proceedings, it specifically authorizes the payment of punitive damages and compensation for pain and suffering.

[Catherine F. Klein & Leslye E. Orloff, *Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law,* 21 *Hofstra L.Rev.* 801, 994 (1993).]

In short, New Jersey has evidenced a profound interest in combatting the domestic violence epidemic.

In *State v. Kelly,* 97 *N.J.* 178, 190–91 n. 2, 478 *A.*2d 364 (1984), the Court said:

In enacting [its first] Prevention of Domestic Violence Act, the New Jersey Legislature recognized the pervasiveness and seriousness of domestic violence:

The Legislature finds and declares that domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses or cohabitants; that a significant number of women who are assaulted are pregnant; that victims of domestic violence come from all societal and economic backgrounds and ethnic groups; that there is a positive correlation between spouse abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence. It is therefore, the intent of the Legislature to assure the victims of domestic violence the maximum protection from abuse the law can provide.

[*N.J.S.A.* 2C:25–2].

At the same time, a dominant theme of our law is the preservation of the family. In 1983, the Constitution of the State of New Jersey was amended to create a family court. *N.J. Const.* art. VI, § 3, ¶ 3. The idea of creating a separate court to hear family-type matters has long been supported in New Jersey.

The concept of a [family court that] would handle virtually all family related disputes has had the support of legislators, planners, concerned citizens and others at least since 1947 when delegates to the Constitutional Convention called for the establishment of a family court. The New Jersey Family Court Study Commission (1972), the Supreme Court Committee on Juvenile and Domestic Relations Courts (late 1970's), the Committee on Matrimonial Litigation (Pashman II) (1981) and the Preliminary Family Part Planning Committee (Pashman III) (1982) all issued reports calling for a family court.

[State Family Court Committee, *Report of the State Family Court Committee to the June 24, 1983 Judicial Conference* (1983) at i.]

 Coincident with that constitutional amendment was a major modification of practice to furnish that court with jurisdiction over subjects that chancery courts had not had before, including juvenile delinquency and certain forms of criminal conduct, such as interference with custody. The overriding notion was that this court would specialize in and uniquely understand the problems of families and all matters related thereto. The goal was to achieve a sounder and better form of justice. Plaintiff argues that if she were not married to defendant she would have been able to sue him for assault in a law court and obtain a jury trial. She posits the anomaly that an unmarried victim of abuse would have reparation rights that she does not. That is not true. The jurisdiction of the Family Part of the Superior Court extends to "[a]ll civil actions in which the principal claim is unique to and arises out of a family or family-type relationship." *R.* 5:1–2. Thus, cases involving unmarried cohabitants may be adjudicated in the Family Part. *Crowe v. De Gioia,* 102 *N.J.* 50, 56, 505 *A.*2d 591 (1986). Other aspects of the dispute before us undoubtedly would have been heard in the Family Part. Plaintiff's claim is like that of any other claimant, married or not, that arises from a family-type relationship.

 In every family court action, whatever the relationship among the adults, when the interests of children are at stake a paramount concern of courts remains the best interests of the children. *See In re L.A.S.,* 134 *N.J.* 127, 134, 631 *A.*2d 928 (1993). The children of a marriage do not themselves demand a trial by jury. They may, however, be affected by the outcome or a delay in the resolution of the controversy. Hence, we believe that a major factor deciding the question whether jury trials will be given for a marital tort action should be the divisibility of the tort claim from the other matters in controversy between the parties. When issues of child welfare, child support, and child parenting are intertwined with dissolution of the marriage and the necessary resolution of the marital tort, the Family Part may conclude that the marital tort should be resolved "in conjunction with [the

divorce] action as part of the overall dispute between the parties." *Tevis, supra,* 79 *N.J.* at 434, 400 *A.2d* 1189. "[I]n order to lay at rest all their legal differences in one proceeding and avoid the prolongation and fractionalization of litigation," *ibid.,* the Family Part should retain jurisdiction over the matter and try that cause of action without a jury in the same proceedings. Under those circumstances, the tort is germane to and grows out of the subject matter of the divorce action, and should be tried in the Family Part as contemplated by the doctrine or ancillary jurisdiction.

On the other hand, when the Family Part is convinced that society's interest in vindicating a marital tort through the jury process is the dominant interest in the matter, it may order that the marital tort be tried by a jury. Should the court so decide, the next question is where should the trial take place. We believe that that decision should rest within the sound discretion of the Family Part judge. There are obvious advantages to the Family Part judge managing the civil tort action. For example, the Family Part judge will have managed the case from its inception to the date of trial. Moreover, the Family Part judge can coordinate discovery that will bear on the economic needs of the battered partner as well as the assets of the other partner, and utilize that information to assess the fair measure of any punitive damages claimed.

We readily acknowledge, however, the difficulty of empaneling juries in the Family Part to decide the marital tort. Courtrooms designed for supervised visitation or for mediation of family matters are not easily adaptable for jury trials. In addition, the work day of the judge requires ever-present readiness to clear the courtroom to attend to the many emergent matters that arise in the Family Part, including juvenile matters and the enforcement of the Prevention of Domestic Violence Act. *See N.J.S.A.* 2C:25–28. Juries cannot be shuffled in and out without inconvenience to them or to the interests of justice. In smaller counties, the work of the Family Part judge would be effectively shut off if she were working with a jury.

Consequently, when Family Part judges exercise their discretion to have marital torts tried separately, they may order

that the marital tort action be severed and the tort claims transferred to the Law Division for trial in accordance with the regular Civil Division procedures. *See R.* 5:1–2(c) (providing for transfer of criminal action to Law Division pursuant to *R.* 3:1–5(b) when defendant is entitled to and demands a jury trial). We note, but do not decide, that, unlike claimants in the Family Part, a plaintiff in the Law Division may not be entitled to recover attorney's fees.

We are unable to assess on this record the effect that a jury trial will have on the resolution of the remaining marital issues, that is, whether if issues are interrelated, the resolution of those remaining issues should be deferred or be resolved subject to reopening. For example, if issues of alimony depend on the availability of income and the tort judgment depletes income-producing assets of one spouse, how will the effect of that depletion be addressed in the Family Part? As noted, this case may present a deceptive ease of administration because of the nature of the underlying marital dissolution action.

The recent report of the Jury Trial Subcommittee recommends that if there is to be a jury trial, the tort claims should be tried prior to the dissolution action. That approach would enable the Family Part judge to consider the tort award when rendering its decision concerning equitable distribution, child support, spousal support and the parties' method of payment. Jury Trial Report, *supra,* at 40. Family Part judges are authorized to make interim economic and custody determinations while the tort action is pending. *Id.* at 34–35. The report reasons that resolving the divorce action first might lead to an increase in *Lepis* applications because parties against whom a tort judgment is entered would seek to reopen their economic divorce settlements based on a change of circumstances. *Id.* at 37 (citing *Lepis v. Lepis,* 83 *N.J.* 139, 416 *A.*2d 45 (1980)).

The report itself acknowledges drawbacks to that approach. For example, the delay in resolving the divorce proceeding may have a negative psychological impact on parties by prolonging the uncertainty of their marital status. *Id.* at 41. One commentator

has noted that a jury hearing the tort action "cannot assess a defendant's assets properly to determine punitive damages without knowledge of the defendant's financial position. Yet until equitable distribution has been made, the tortfeasor's net worth is an open question." David M. Wildstein, *The Application of the Entire Controversy Doctrine to Family Part Actions,* 16 *N.J. Fam. Law.* 69, 77 (1996). We may need to re-evaluate those procedural questions in light of case-by-case experience.

We are certain of one thing: most matters will benefit from single-case management by the judge of the Family Part. All issues, including the marital tort, should be submitted to the available processes of mediation and non-binding arbitration. Failing resolution of all issues, that court should decide whether, on balance, the interests in vindicating the marital tort outweigh the interests of a unitary disposition of the family dispute and warrant a jury trial. This would be consistent with the Legislature's intent "to assure the victims of domestic violence the maximum protection from abuse the law can provide." *N.J.S.A.* 2C:25–18. Obviously, the court will consider in its assessment of the interests, the nature and extent of the violence inflicted on the spouse, be it mental or physical. After all, "these disputes are not private wars. Acts of domestic violence are often crimes. The public has an interest, wholly apart from that of litigants, in the fair and effective resolution of these cases." *A.B. v. L.M.,* 289 *N.J.Super.* 125, 131, 672 *A.2d* 1296 (App.Div.1996). Trial by jury, for reasons rooted in our history and tradition, is a special repository of public confidence that our laws will be vindicated. *State v. Dunne,* 124 *N.J.* 303, 319, 590 *A.2d* 1144 (1991).

We recognize that this disposition adds but another care to judges already heavily burdened. The Legislature has reposed grave responsibilities on Family Part judges to ensure the safety and well-being of women and children in our society. *See N.J.S.A.* 2C:25–17 to –33 (Prevention of Domestic Violence Act of 1991); *N.J.S.A.* 30:4C–15.1 (termination of parental rights). But the Family Part judges are the successors of those "courts of con-

science," *Shaw v. G.B. Beaumont Co.*, 88 *N.J. Eq.* 333, 336, 102 *A.* 151 (E. & A. 1917), that have always administered justice to the citizens of New Jersey. We are confident that they can successfully balance the interests of society in deterring the evils of domestic violence and caring for families. Our system entrusts those judges to decide the most profound issues affecting our society, which of two often worthy parents shall receive custody of a child, *Pascale v. Pascale*, 140 *N.J.* 583, 660 *A.*2d 485 (1995), and sometimes that neither parent may retain custody of a child and that parental rights must be terminated. *In re L.A.S.*, *supra*, 134 *N.J.* 127, 631 *A.*2d 928. In fact, pursuant to the Prevention of Domestic Violence Act, the Legislature has authorized Family Part judges to award civil and punitive damages to the victims of domestic violence. *N.J.S.A.* 2C:25–29b(4). Judges who can make such decisions can surely assess the monetary value of a tort and whether the vindication of public policy against such tortious conduct requires a jury trial in given circumstances. *Brown*, *supra*, 208 *N.J.Super.* 372, 506 *A.*2d 29, illustrates the sound exercise of discretion in recognizing the separability of a marital tort from the dissolution action.

We do not believe that jury trial of appropriate cases will place an undue burden on our courts. Our experience of jury demands in the years since *Tevis* has not been great. "[T]he family lawyer's role is one of the most important in ending domestic violence." Roberta L. Valente, *Addressing Domestic Violence: The Role of the Family Law Practitioner*, 29 *Fam.L.Q.* 187, 193 (1995). The matrimonial bar is in the best position to assess in the first instance the interests of its clients. Family lawyers are experienced in knowing the special skills of Family Part judges to resolve, with dispatch and fairness, the entirety of a family dispute, including the *Tevis* claims. This case involves a marital dispute between two attorneys. In others, the lack of insurance coverage for intentional torts (unlike the available coverage for automobile negligence when *Merenoff v. Merenoff*, 76 *N.J.* 535, 388 *A.*2d 951 (1978), abolished inter-spousal immunity) may render the tort action an illusory remedy. In any case, the policy of the

law remains the same. In enacting the Prevention of Domestic Violence Act, the Legislature recognized that "domestic violence is a serious crime against society" that affects people "from all social and economic backgrounds and ethnic groups." *N.J.S.A.* 2C:25-18. Consistent with the objectives underlying the Act, we should strive to afford citizens "the maximum protection from abuse the law can provide." *Ibid.* In some cases, the maximum protection of the law will be in the form of a jury trial. In other cases, where other interests of the law converge, the maximum protection of the law will be in the form of non-jury trial. We invest the Family Part with discretion to make an appropriate judgment concerning the type of trial to be afforded, with special emphasis placed on the severability of the tort claim from the other matters in controversy between the parties.

In this case, to end the dispute, we determine that a sufficient divisibility among the claims exists to warrant a jury trial of the tort claim. The Family Part judge shall retain management of the entire case until she decides whether to try the tort claim herself or transfer it to the Law Division. As modified, the judgment of the Appellate Division is affirmed.

STEIN, J., concurring in part and dissenting in part.

I concur in the Court's judgment mandating a jury trial of plaintiff's tort claim, and agree with much of the substantive content of the Court's opinion. I find unacceptable, however, the broad discretion that the Court confers on Family Part judges to decide whether or not the victim of a marital tort is entitled to a jury trial on her tort claim that is joined with a divorce action. The Court holds that "[w]hen issues of child welfare, child support, and child parenting are intertwined with dissolution of the marriage and the necessary resolution of the marital tort ... the Family Part should retain jurisdiction over the matter and try that cause of action without a jury in the same proceedings." *Ante* at 302, 678 *A.*2d at 677.

I disagree profoundly with that disposition, which vests virtually standardless discretion in Family Part judges to deny jury trials in marital tort claims. Under the Court's formulation, the Family Part could deny a jury trial in virtually every marital tort claim on the basis that the potential monetary award by a jury necessarily is "intertwined" with issues of alimony, child support and equitable distribution.

The Court's ruling may be pragmatic, on the assumption that consolidating trial of the tort and divorce actions before the Family Part judge will save time and judicial resources. But the holding is wrong, because it ignores society's evolving determination to stamp out domestic violence and to punish those who perpetrate it, a determination emphatically endorsed by our Legislature in enacting the "Prevention of Domestic Violence Act of 1991," *L.* 1991, *c.* 261, *N.J.S.A.* 2C:25–17 to –33. Society's growing recognition and understanding of the evils of domestic violence compels a reciprocal response by the judiciary, one that provides the fullest measure of vindication authorized by law to compensate victims of domestic violence. To that end, I would hold that all victims of marital torts who seek a jury trial are entitled to have a jury trial, whether that marital tort claim is or is not joined with a claim for divorce. I would allow only the narrowest exception to that rule: if the Family Part judge before whom the divorce action is pending determines that the marital tort action involves an obviously insignificant claim that has been asserted primarily for strategic reasons and is designed to influence the outcome of the divorce action, the Family Part judge may treat the tort claim as ancillary to the divorce action and decide it without a jury.

I

The Court properly explains that the question whether the marital tort claim must be joined with the action for divorce does not resolve the issue of the tort plaintiff's entitlement to a jury trial. *Ante* at 291–92, 678 *A.2d* at 672. In *Tevis v. Tevis,* 79 *N.J.* 422, 400 *A.2d* 1189 (1979), the Court ruled that a wife's claim for

damages, arising from a beating inflicted by her husband and filed more than two years after the assault, was barred by the statute of limitations, *id.* at 434, 400 *A.*2d 1189, observing in *dictum* that under the claim joinder requirements of the entire controversy doctrine the marital tort claim should have been joined in the prior divorce action between the parties "in order to lay at rest all their legal differences in one proceeding and avoid the . . . fractionalization of litigation." *Ibid.* Some states hold that divorce actions and marital tort claims are "separate and independent causes of action that do not have to be joined in a single proceeding." Andrew Schepard, *Divorce, Interspousal Torts, and Res Judicata,* 24 *Fam. L.Q.* 127, 130 (1990); *see, e.g., Simmons v. Simmons,* 773 *P.*2d 602, 604–05 (Col.Ct.App.1988); *Heacock v. Heacock,* 402 *Mass.* 21, 520 *N.E.*2d 151, 153 (1988); *Walther v. Walther,* 709 *P.*2d 387, 388 (Utah 1985). I agree with the Court's apparent conclusion that joinder of the marital tort claim with the divorce proceeding ordinarily should be required. Even spouses engaged in an adversarial divorce proceeding have an interest in conducting candid settlement negotiations or in resolving in a single proceeding all of their outstanding disputes. Those considerations support the wisdom of requiring that the marital tort claim and the divorce action be joined in a single proceeding.

The Court holds that the doctrine of ancillary jurisdiction authorizes the Family Part, in its discretion, to adjudicate the marital tort without a jury in those cases in which the court concludes that the tort claim may be "intertwined" with issues of child support, alimony, and equitable distribution. *Ante* at 301–02, 678 *A.*2d at 677. The marital tort claim, if successfully litigated, will inevitably have some impact on the tortfeasor's financial status and, on that basis, may affect and be "intertwined" with the Family Part's resolution of issues directly related to the financial condition of the parties, including alimony, child support, and equitable distribution. Under the Court's discretionary standard, Family Part judges would be required to permit jury trials in relatively few marital tort cases joined with divorce actions.

Article I, Paragraph 9 of the 1947 Constitution preserves the common law right of trial by jury: "The right of a trial by jury shall remain inviolate." Our Court has interpreted that provision, consistent with its plain meaning, as ensuring that "[w]here the right to a trial by jury existed under the Constitution of 1844, the right continues unimpaired under the new Constitution." *Steiner v. Stein*, 2 *N.J.* 367, 378–79, 66 *A.*2d 719 (1949). At common law, tort claims were among the category of legal actions entitled to the right of trial by jury. *See Kenney v. Scientific, Inc.*, 213 *N.J.Super.* 372, 374–75, 517 *A.*2d 484 (App.Div.1986). Thus, unless the marital tort claim is "ancillary" to the action for divorce, plaintiffs asserting such claims are entitled to a jury trial.

The Court strains the ancillary jurisdiction doctrine when it holds that marital tort claims generally may be regarded as ancillary to actions for divorce. We have recognized that legal claims are "ancillary" to claims for equitable relief if they are "germane to or grow out of the subject matter of the equitable jurisdiction," *Fleischer v. James Drug Stores, Inc.*, 1 *N.J.* 138, 150, 62 *A.*2d 383 (1948), and that equity courts can deal with legal issues if " 'their decision is incidental or essential to the determination of some equitable question.' " *Shaw v. G.B. Beaumont Co.*, 88 *N.J. Eq.* 333, 336, 102 *A.* 151 (E. & A. 1917) (quoting *Stout v. Phoenix Assurance Co. of London*, 65 *N.J. Eq.* 566, 573–74, 56 *A.* 691 (Ch.Div.1904)). Those standards necessarily are imprecise, and in this context are entirely inadequate to guide the policy determination at the root of this appeal. The marital tort claim in the broadest sense may be "germane" to the divorce action, but it is not germane *enough* to be ancillary. The Court should not characterize a marital tort claim as "ancillary" to a pending divorce action because that tort claim is too important a mechanism for vindicating the public policies designed to punish perpetrators of domestic violence. By holding that the Family Part generally may regard marital tort claims as ancillary to divorce actions, the Court in effect diminishes the importance of the harm inflicted by domestic violence and countermands the escalating

social and legislative determination to eradicate domestic violence and its destructive effects.

The Court thoroughly describes the danger posed by domestic violence incidents. The Court refers to a 1992 congressional report indicating that "the most dangerous place in the United States for a woman to be is in her home," and also notes studies demonstrating that approximately eighty percent of women that file suit for divorce cite physical abuse by their husbands as a cause. *Ante* at 298–99, 678 *A*.2d at 675. The legislative findings and declaration in the Prevention of Domestic Violence Act of 1991 endorse those concerns in the strongest terms:

> The Legislature finds and declares that domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses or cohabitants; that a significant number of women who are assaulted are pregnant; that victims of domestic violence come from all social and economic backgrounds and ethnic groups; that there is a positive correlation between spousal abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence. It is therefore, the intent of the Legislature to assure the victims of domestic violence the maximum protection from abuse the law can provide.
>
> [*N.J.S.A.* 2C:25–18.]

Not only did the Legislature identify domestic violence as a serious and pervasive societal problem; it specifically admonished the judiciary to provide both "emergent and long-term civil and criminal remedies" to address domestic violence. *Ibid.* The Legislature stated:

> The Legislature finds that battered adults presently experience substantial difficulty in gaining access to protection from the judicial system, particularly due to that system's inability to generate a prompt response in an emergency situation.
>
> ... Further, it is the responsibility of the courts to protect victims of violence that occurs in a family or family-like setting by providing access to both emergent and long-term civil and criminal remedies and sanctions, and by ordering those remedies and sanctions that are available to assure the safety of the victims and the public. To that end, the Legislature encourages.... the broad application of the remedies available under this act in the civil and criminal courts of this State.
>
> [*Ibid.*]

In the face of that legislative directive, the Court dilutes the judiciary's responsibility to afford civil remedies to victims of

domestic violence when it authorizes tort claims arising from
domestic violence to be treated as a regrettable outgrowth of the
marital relationship, ancillary to the other, and presumably more
significant, issues in the divorce action. The day is long passed
when "a husband could command his wife's obedience, and subject
her to corporal punishment or 'chastisement' if she defied his
authority." Reva B. Siegel, *"The Rule of Love": Wife Beating as
Prerogative and Privacy*, 105 *Yale L.J.* 2117, 2123 (1996). Al-
though most states had repudiated the right of "chastisement" by
the late nineteenth century, for many years courts were reluctant
to accord affirmative relief to women beaten by their husbands.
*Id.* at 2141. As Professor Siegel observes, early in this century
many state courts refused to recognize causes of action by bat-
tered wives against their husbands on the ground that to do so
would disturb " 'the tranquillity of family relations.' " *Id.* at 2166
(quoting *Drake v. Drake*, 145 *Minn.* 388, 177 *N.W.* 624, 625
(1920)).

The Court's disposition reflects an analogous and regressive
response to marital tort actions, permitting them to be too readily
characterized as ancillary to a divorce action, and impliedly sanc-
tioning the view that such claims are an incident of the marital
relationship. On that subject, the Legislature has taken the lead,
stating categorically that "the official response to domestic vio-
lence shall communicate the attitude that violent behavior will not
be excused or tolerated, and shall make clear the fact that the
existing criminal laws and civil remedies created under this act
will be enforced *without regard to the fact that the violence grows
out of a domestic situation.*" *N.J.S.A.* 2C:25–18 (emphasis add-
ed).

On issues such as this, the importance of judicial economy and
efficiency pales in comparison to the judiciary's higher responsibil-
ity to respond to the scourge of domestic violence by according its
victims the same right that our civil law affords to every other
victim of an unlawful assault and battery—a trial before a jury.
That the victim is also engaged in a divorce action with the

perpetrator of the tort should be irrelevant to the remedy afforded by law to the tort victim. Moreover, if the tort claim were tried by the judge trying the divorce action, the damages awarded on the tort claim inevitably will be influenced by the judge's overriding obligation to resolve all of the financial issues in the divorce case. A separate jury trial on the tort claim, however, would focus only on that claim and the damages necessary for its vindication. The likelihood that a jury trial of the tort claim ordinarily would result in a more generous damages award underscores the judiciary's obligation to respond clearly and evenhandedly to the claims of victims of domestic violence, affording them no less than the full panoply of remedies available to other citizens. In my view, the Court's response is deficient.

I would also note that the practical problems can readily be addressed by the Family Part judge requiring trial of the marital tort claim prior to trial of the divorce action. If issues of punitive damages arise in the tort case, evidence of the defendant's estimated obligations arising out of the divorce action can be presented to the jury. If a jury returns a verdict in favor of the plaintiff in the marital tort action, the trial court should stay entry of the judgment and permit the Family Part judge to take the judgment into account in its resolution of issues pending in the divorce action. The divorce action should be tried after the tort claim, taking into account the result of the marital tort action in resolving financial issues between the parties. .

## II

I join in the Court's judgment, but not in the rule it announces allowing marital tort suits generally to be treated as ancillary to divorce actions. The time for regressive responses to the evils of domestic violence has passed. The Court should allow jury trials in virtually all marital tort cases, reflecting its determination to deter domestic violence with every resource available to the judiciary.

COLEMAN, J., joins in this opinion.

*For modification and affirmance*—Justices HANDLER, POLLOCK, O'HERN and GARIBALDI—4.

*For concurrence in part, dissent in part*—Justices STEIN and COLEMAN—2.