824 A.2d 293

MELANIE BORCHERT, PLAINTIFF v. WILLIAM
G. BORCHERT, DEFENDANT

Superior Court of New Jersey
Chancery Division Family Part Mercer County

February 28, 2002.

176

*John A. Hartmann,* for Plaintiff (*Pellettieri, Rabstein & Altman,* Attorneys).

*John S. Furlong,* for Defendant (*Furlong & Krasny,* Attorneys).

LAURA M. LE WINN, J.S.C.

This matter stems from a divorce action in which defendant filed an answer and counterclaim including six counts for relief sounding in tort, to wit: (1) false arrest/false imprisonment; (2) intentional infliction of emotional distress; (3) defamation of character; (4) tortious interference with prospective economic advantage; (5) outrage and (6) malicious abuse of process. An earlier order of the court, entered on June 26, 2000, provided that the tort claims "shall not be severed to the Law Division, rather it shall be determined in conjunction with the Family Part action."

In response to plaintiff's motion for dismissal of, or alternatively for summary judgment on, these tort claims the court entered an order dismissing the first five claims, amending the sixth claim to one of "malicious prosecution" and, as amended, denying dismissal and/or summary judgment on that claim. This order also required the parties to consult and consider submission of this remaining tort claim to voluntary arbitration pursuant to R. 4:21A–1(b). Through subsequent correspondence, counsel for both parties advised the court of their mutual agreement to submit the remaining tort claim to arbitration pursuant to court rule.

Thereafter, defendant's counsel wrote to the court suggesting submission of this claim to the offer-of-judgment procedure in R. 4:58–1, despite language in that rule prohibiting its application "in matrimonial actions." Upon receipt of a letter of objection from plaintiff's counsel, the court held a telephone conference with both attorneys and asked for the submission of briefs, which have now been received.

Upon review of all the relevant facts as well as the briefs submitted, and based upon the ensuing legal analysis, the court concludes that defendant's marital tort claim may properly be submitted to the offer-of-judgment procedure in R. 4:58–1 et seq.

That rule states, in pertinent part:

> *Except in a matrimonial action,* any party may, at any time more than 20 days before the actual trial date, serve upon any adverse party, without prejudice, and file with the court, an offer to take judgment in the offeror's favor, or as the case may be to allow judgment to be taken against the offeror for a sum stated therein or for property or to the effect specified in the offer (including costs).
> (Emphasis added.)

The remainder of the rule addresses the consequences of non-acceptance of an offer by either party (claimant and/or non-claimant), including possible awards of counsel fees, costs of litigation and interest on the amount recovered.

As will be explained below, the court concludes that the highlighted language at the outset of *R.* 4:58–1 does *not* bar its application in the context of this case.

The claim at issue-malicious prosecution—clearly sounds in tort. "Broadly speaking, a tort is a civil wrong, other than a breach of contract, for which the court will provide a remedy in the form of an action for damages." Prosser, *Law of Torts* (4th ed.1971), pp. 1 and 4. See also, *Blazer Corp. v. N.J. Sports & Exposition Auth'y.,* 195 *N.J.Super.* 542, 549, 480 *A.*2d 953 (Law Div.1984), aff'd on other grounds, 199 *N.J.Super.* 107, 488 *A.*2d 1025 (App.Div.1985). See also, *Lind v. Schmid,* 67 *N.J.* 255, 262, 337 *A.*2d 365 (1975), setting forth the elements of the tort of malicious prosecution.

The fact that this is a tort claim between parties to a divorce proceeding is not dispositive of the issue before the court.

In *Tevis v. Tevis,* 79 *N.J.* 422, 400 *A.*2d 1189 (1979) (hereinafter *"Tevis"*), the Supreme Court was confronted with a statute-of-limitations attack on a tort complaint brought by a wife after a final judgment had been rendered in her divorce action. In that context, the Court held that the tort claim was time-barred. A major premise underlying this conclusion was the Court's view that "the circumstances of the marital tort and its potential for money damages were relevant in the matrimonial proceedings" and, therefore, "the [tort] claim . . . should, under the 'single controversy' doctrine, have been presented in conjunction with that action as part of the overall dispute between the parties in

order to lay at rest all their legal differences in one proceeding and avoid the prolongation and fractionalization of litigation." *Id.* at 434. *Tevis* did not present—and the Supreme Court did not address—the issue involved here, namely *the appropriate method(s) for resolving* a timely pled and properly preserved marital tort claim.

That issue received some attention years later in *Brennan v. Orban,* 145 *N.J.* 282, 678 *A.*2d 667 (1996), in which the Supreme Court addressed the question of whether litigants are entitled to try their marital tort claims before a jury. In considering the doctrine of "ancillary jurisdiction" the Court noted, "once the Chancery Division asserts jurisdiction over a complaint seeking equitable relief, *it has the power to dispose of ancillary legal claims and award money damages." Id.* at 293, 678 *A.*2d 667 (citations omitted, emphasis added). The Court applied the "ancillary jurisdiction" analysis to the question before it, and opined:

> [W]e believe that a major factor deciding the question whether jury trials will be given for a marital tort action should be the divisibility of the tort claim from the other matters in controversy between the parties. When issues of child welfare, child support, and child parenting are intertwined with dissolution of the marriage and the necessary resolution of the marital tort, the Family Part may conclude that the marital tort should be resolved "in conjunction with [the divorce] action as part of the overall dispute between the parties.".... Under those circumstances, the tort is germane to and grows out of the subject matter of the divorce action, and should be tried in the Family part, as contemplated by the doctrine or [*sic*] ancillary jurisdiction. *Id.* at 302, 678 *A.*2d 667 (citation omitted)

Such considerations, in turn, led the *Brennan* Court to the following conclusion which is of particular relevance here: "We are certain of one thing: most matters will benefit from single-case management by the judge of the Family Part. *All issues, including the marital tort, should be submitted to the available processes of mediation and non-binding arbitration." Id.* at 304, 678 *A.*2d 667 (emphasis added)

Thus, it appears that retention of jurisdiction over marital tort claims in the Family Part is essentially a matter of case management. The mere fact that the Family Part is entrusted with disposition of these tort claims does not, and should not, bar

submission of such claims to the generally available procedures of resolution and disposition.

Plaintiff points out that both *R* 4:3–1(a)(3) and *R.*5:1–2(a) assign to the Family Part "[a]ll civil actions in which the principal claim is unique to and arises out of a family or family-type relationship[.]" Therefore, plaintiff argues, because defendant's malicious prosecution claim stems from "the same facts that were repeatedly addressed in numerous pleading in the matrimonial matter" (plaintiff's letter brief, p. 2), the claim properly belongs in the Family Part and for *that* reason is a "matrimonial action." Plaintiff also contends that the court's earlier order providing that defendant's malicious prosecution claim "shall be determined in conjunction with the Family Part action" is "the law of the case" with respect to the *R.*4:58–1 offer-of-judgment issue. (*Id.* at p. 4)[1]

*R.*4:3–1(a)(3), *R.* 5:1–2(a), and the earlier court order are all consistent with the *Brennan* Court's "ancillary jurisdiction" analysis discussed above. The Family Part may properly assert jurisdiction over marital tort claims. However, that assertion of jurisdiction does not automatically render the tort claim a "matrimonial action" for *R.* 4:58–1 purposes. Plaintiff's argument would be significantly stronger if the introductory language to that rule

---

[1] Plaintiff provides no legal analysis in support of her "law of the case" assertion. The "law of the case doctrine" "most commonly applies to the binding nature of appellate decisions upon a trial court if the matter is remanded for further proceedings....The doctrine...is also applied to the question of whether or not a decision made by a trial court during one stage of the litigation is binding throughout the course of the action." *State v. Hale,* 127 *N.J.Super.* 407, 410–411, 317 A.2d 731 (App.Div.1974) See also, *Slowinski v. Valley National Bank,* 264 *N.J.Super.* 172, 179–180, 624 A.2d 85 (App.Div.1993) However, this doctrine is "not mandatory and need not be mechanistically applied in all cases. Rather, when applied to interlocutory orders, the doctrine is discretionary to be applied flexibly in order to serve the interest of justice." *State v. King,* 340 *N.J.Super.* 390, 400, 774 A.2d 629 (App.Div.2001) (citations omitted). With respect to interlocutory trial court orders, the doctrine "operates as a discretionary rule of practice and not one of law." *Brown v. Township of Old* Bridge, 319 *N.J.Super.* 476, 494, 725 A.2d 1154 (App.Div.1999), certif. den. 162 *N.J.* 131, 741 A.2d 99 (1999) Thus, even if the law of the case doctrine were applicable to this matter, its application would not mandate the result plaintiff seeks.

read: "Except in a *Family Part* action....." However, the rule reads as it does, and the court finds this a significant and outcome-determinative distinction for purposes of this opinion.

Plaintiff did not dispute the reasonableness of submitting her tort claim to non-binding arbitration under *R.* 4:21A–1(b). Moreover, this step is consistent with the *Brennan* Court's view of submitting marital tort claims to such "available processes[.]" Significantly, *R.* 4:21A–3 expressly states that the "[p]rovisions of R. 4:58 *shall* apply to arbitration proceedings" with certain exceptions not relevant here. (Emphasis added) Thus, our Court Rules establish a clear working connection between the arbitration process and the offer-of-judgment process.

The question then arises as to the meaning of the phrase "matrimonial action" in the exception language of *R.* 4:58–1. Unless the introductory phrase in this rule is to be considered mere surplusage—which this court does not consider it to be—it must be infused with some substance.

The definition of "Civil Family Actions" in *R.* 5:1–2(a) includes "all civil actions and proceedings formerly designated as matrimonial actions[.]" This designation, contained in former *R.*4:75, included "all actions directly involving the status of marriage, awards to and support of spouses and former spouses, the custody and support of children; and claims between spouses and former spouses as to property claimed to be owned by them[.]" See, generally, *Jobe v. Jobe,* 197 *N.J.Super.* 596, 599, 485 *A.*2d 1059 (App.Div.1984).

The language of the former rule is a useful guide in defining "matrimonial action" for *R.* 4:58–1 purposes. Issues of spousal and child support, custody and property distribution are governed by specific statutory standards. *N.J.S.A.* 2A:34–23 through 23.1. These standards, in turn, focus on factors intrinsic to the marital relationship itself such as, for example, the marital standard of living, the parties' respective earning abilities, needs, age/health, the length of the marriage, marital effort in procuring assets, and the needs of the children.

Clearly, child custody/parenting time issues are frequently re-solved by mediation; and financial issues may regularly be re-solved by settlement techniques akin to mediation or arbitration. These realities hearken back to the *Brennan* Court's acknowl-edgement that such procedures may be appropriate for resolution of these issues. 145 *N.J.*, *supra* at 304, 678 *A.*2d 667. However, the offer-of-judgment procedure is *not* clearly so appropriate to resolve issues that, more often than not, involve intense back-and-forth negotiation of numerous inter-related factors. In short, the complex, inter-related nature of basic matrimonial issues renders the offer-of-judgment process essentially ineffective.

By contrast, tort claims seek payment of a sum of unliquidated damages. The gravamen of a tort claim (assuming liability is established or conceded) essentially relates to the amount of that sum based on the perceived extent of the asserted injury. In this context, the offer-of-judgment procedure can be an effective mech-anism for encouraging settlement of such claims.

Although not clearly stated as such by plaintiff, the court assumes the basis for her resistance to the offer-of-judgment procedure stems from the "consequences of non-acceptance" set forth in *R.* 4:58–2. Those consequences include the imposition of costs of suit, litigation expenses, interest and attorney's fees, in the event the final determination of defendant's claim is "in excess of 120% of [his] offer." Presumably plaintiff is unwilling to accept the risk implicit in this procedure.

However, it is worth noting that *R.*5:3–5(c)—dealing with coun-sel fee awards in "Civil Family Actions"—has a comparable provi-sion in matters involving claims for "divorce, nullity, support, alimony, custody, parenting time, equitable distribution, separate maintenance, [and] enforcement of interspousal agreements relat-ing to family type matters[.]" One of the factors enumerated by that rule as bearing on a counsel fee award in such matters is "the reasonableness and good faith of the positions advanced by the parties[.]" This rule is in harmony with the public policy implicit

in *R.* 4:58–2, allocating the fees and costs of litigation in proportion to the reasonableness and good faith of the parties thereto.

The "reasonableness and good faith" of the offeror's position, in *R.* 4:58 proceedings is the implicit focal point of the "consequences of non-acceptance" provided therein. Thus, plaintiff is in no more vulnerable position under *R.* 4:58 than she risks generally under *R.* 5:3–5(c) in the event the court determines her position on any of the claims enumerated in that rule is "unreasonable" or "in bad faith."

Based on the foregoing, the court concludes that the "matrimonial action" exception in *R.* 4:58–1 does *not* bar defendant—or plaintiff either, for that matter—from invoking the offer-of-judgment procedure in furtherance of his marital tort claim. Plaintiff's grounds for opposing this procedure are misplaced, as a matter of law, and misguided, as a matter of fact.